## Thomas Clagett *vs.* James O. Easterday, John Easterday and Gamaliel Easterday.

*Practice: Amendment of the original Writ and the Narr. by changing Form of action—Pleading: What a sufficient assignment of the breach of a Covenant— When the record of a former case is Admissible in evidence—Damages for breach of Covenant to convey land— What damages are too remote and contingent—Measure of Damages—Suit on contract without rescinding it—Evidence as to damages— Witness.*

Where the jury has been sworn and the trial proceeded with, it is not necessary, upon the amendment of the original writ and the *narr.* by changing the form of action from assumpsit to covenant, to withdraw a juror or re-swear the jury. ( *Code, Art.* 75, *secs.* 23, 24 *and* 32.)

In an action for breach of a covenant to convey certain land, the *narr.* need not, in the assignment of the breach of the covenant, describe by courses and distances or metes and bounds what particular part of the. land was withheld.

In a pending suit, the record of a former case between the same parties and relating to the same subject-matter, is admissible in evidence.

By a written agreement under seal, C. agreed to convey to E. a parcel of land. E., on this agreement, brought an action of covenant against C. for a failure to convey and deliver possession of 5½ acres on which there was a mill-site, being part of the land agreed to be conveyed. Evidence was offered to show that C. sometime after the date of the agreement purchased the 5½ acres and offered to convey them to E. under the terms of the contract and that E. refused to accept the offer. HELD :

1st. That evidence of the yearly rental value of a mill suitable for such a site was inadmissible, as there could be no recovery of the rents and profits of a mill which never had an existence.

2nd. That evidence that C. knew that E. was purchasing the land as a mill-site and intended to erect a mill on it, was inadmissible.

3rd. That the measure of damages in this case was the fair rental value of the 5½ acres in the condition they were at the time of the agreement, from the date of the agreement to the time when C. offered to convey the 5½ acres, if the jury should find that he made such offer.

4th. That in order to determine the rental value of the 5½ acres, evidence was admissible to show that there was a mill-site on it.

5th. That it was not necessary for E. to rescind the contract in order to enable him to recover for the time during which any part of the land was withheld from him.

Where a party fails to perform his contract to convey land the true measure of damages is the value of the land at the time of the breach of the covenant.

A witness may testify to the existence of a mill-site, without being an expert.

APPEAL from the Circuit Court for Frederick County.

Action of covenant to recover damages for the breach of a covenant, to convey certain lands to the plaintiffs. The appellant entered into a contract, under seal, to convey to the appellees, a certain tract of land, situated in Frederick County, containing 68½ acres of land—that being one-half of a tract of land, containing 137 acres. The appellees paid down one-third of the purchase money, and were to give a mortgage for the rest. The appellees entered into possession, but refused to give the mortgage

on a proffer of a deed, alleging that the land proposed to be conveyed to them by the appellant, was not the part of the tract which they had purchased. Thereupon the appellant filed a bill in equity for specific performance. The decree of the Court sustained the appellees' view of the proper location of the land, and ordered the appellant to convey it to the appellees, and the appellees to pay the purchase money for the same, (the time for the credits to be secured by the mortgage having elapsed.) The appellees thereafter brought this action, and offered evidence tending to show that they had originally purchased the land of one Warrenfeltz, an agent of the appellant; that they had purchased it for the benefit of a mill-site on it, which the said agent had pointed out to them ; and that the appellant was aware, that this was the object of the purchase. The mill-site was situated on a portion of the land which the appellant had not offered to convey to the appellees, but which the Equity Court had decided to be a part of the property purchased by the appellees. Other facts are given in the opinion of the Court.

At the trial, fifteen exceptions were taken to the rulings of the Court, and the appellant offered twenty-five prayers, some of which were granted and some rejected. The Court, (LYNCH, J.,) instructed the jury, in addition to the prayers granted.

[It is not deemed necessary to set out the exceptions, prayers and instruction at length, as the substance of them is sufficiently, for the understanding of the points decided, explained in the opinion of the Court.—REP.]

The cause was argued before BARTOL, C. J., STEWART, GRASON and ALVEY, J.

*Chas. W. Ross* and *James McSherry,* for the appellant.

It was absolutely necessary that the jury should be re-sworn on the new issues, after the amendment. The

case of the *Balt. Fire Ins. Co. vs. McGowan,* 16 *Md.,* 47, was an action brought by the appellees in covenant against the appellant upon a policy of insurance.   Plea *non in fregit.*

After the evidence was closed, the plaintiffs asked leave to amend the writ and the *narr.* from *covenant to assumpsit,* and the Court granted the leave, and the amendment was made.   After the amendment was made, the jury were again sworn.   And the Court, Chief Justice LeGrand delivering the opinion, recognized this fact as being proper practice under the circumstances, but assigns no reasons.

The same point was raised in the case of *Garrett vs. Dickerson,* 19 *Md.,* 449.   And the Court there held, that these provisions are clear and intelligible, and authorize amendments *which do not change the substance of the issues.* And also held, " that the amendments did not change the issues joined."   See also *Adams Express Co. vs. Trego,* 35 *Md.,* 61.

It seems clear from the above decisions, that when amendments are made during the progress of the trial, and *the issues are materially changed, it is necessary that the jury should be re-sworn.*

Here the issues are materially changed from *assumpsit* to *covenant,* and come precisely within the practice recognized and approved in the case of *Balto. Fire Ins. Co. vs. McGowan,* 16 *Md.,* 47 ; *See Gould's Pleading,* 215, *secs.* 89, 90 ; *Stephens' Plead.,* 83 ; *Irvin vs. Jones,* 1 *How.,* (*Miss.,*) 497.

If the plaintiffs desired to amend their pleading, they had the right under the Code to do so, and before they could do so the original pleading should have been withdrawn by leave of the Court for amendment.   When the *narr.* is withdrawn so are the pleas and the issue joined thereon.   *Barstow vs. Randall,* 5 *Hill,* 556.

Then, when the new *narr.* and the pleas and replication thereto were filed and issue joined thereon, unless the jury

were sworn to try the issues joined thereon, it was a mistrial and the verdict of the jury was a nullity, because the jury was not sworn till after issue joined. 3 *Black. Com.*, 357, 365.

The demurrer to the plaintiffs' declaration should not have been overruled.

No evidence of special damage is permitted to be given unless specially averred in the declaration. *Carroll vs. McTavish*, 13 *Md.*, 429, *and* 17 *Md.*, 1 ; 1 *Chitty's Plead.*, 388 ; 1 *Step. on Plead.*, 165 ; *Middlekauf vs. Smith*, 1 *Md.*, 329 ; *Abbott vs. Gatch*, 13 *Md.*, 332 ; *Cooke vs. England*, 27 *Md.*, 14.

The ruling of the Court admitting in evidence the proceedings and decree, of the equity case to show, 1st, what land the plaintiffs were entitled to under the agreement. 2nd, that the defendant had failed to convey the land to which the plaintiffs were entitled. 3rd, what part thereof he had failed to convey.

The evidence being offered for these special purposes, if not admissible for such purposes, it must be rejected, though admissible if offered generally. *McTavish vs. Carroll*, 13 *Md.*, 429.

The evidence as to the plaintiffs' object in purchasing the land was inadmissible under the allegations of the *narr.* and should have been rejected or stricken out. If the plaintiffs' object in purchasing this land was in any event material to be known by the jury in this action, it could only be inquired into for one purpose, and then only provided it was fully and distinctly known to the defendant at the time the contract was made, and was connected with the alleged breach of the covenant.

The testimony was offered for the purpose of enabling the plaintiffs to recover for the alleged breach of contract, damages which were not the natural and proximate result of the alleged breach. *Hadley vs. Baxendale*, 9 *Exch.*, 341; *U. S. Telegraph Co. vs. Gildersleve*, 29 *Md.*, 249.

The evidence offered to prove, as a measure of damages, the rental value of such a saw-mill as *might* have been built on this alleged mill-site was inadmissible. The damages, when special, must be *particularly* specified in the declaration. *McTavish vs. Carroll*, 13 *Md.*, 429. The damages alleged and those proved must not be variant. *Ortwine vs. Mayor, &c., Balto.*, 16 *Md.*, 387; *Parker vs. City of Lowell*, 11 *Gray*, 353; *Adams vs. Barry*, 10 *Gray*, 361; 1 *Chitty's Pl*, 371.

The appellees were entitled to the rental value, if at all, for such time only as they were deprived of the possession of the mill-site; and the evidence should have been confined to that period. *Middlekauff vs. Smith*, 1 *Md.*, 338.

Further. The testimony was not admissible because the damages proved by it were remote, contingent, speculative and not contemplated by the parties as the consequence of a breach of the contract at the time it was made.

The rental value allowed in *Abbott vs Gatch*, 13 *Md.*, 314, was of an actual, real and tangible building—not, as in this case, of an *imaginary* structure. And so in *Middlekauff vs. Smith*, 1 *Md.*, 338

Had there been a saw-mill on this property at the time of its purchase by the plaintiffs, then this case would parhaps have been analagous to Abbott and Gatch. It is difficult to perceive what are remote, contingent or speculative damages, if those claimed in this case for the rental value of an imaginary saw-mill are not of that character. *U. S. Telegraph Co. vs. Gildersleve*, 29 *Md.*, 249.

The prayers excluding these damages should for these reasons have been granted, and the instruction of the Court should therefore not have been given.

This is not a total breach of the covenant. A great part of the land which the plaintiffs claimed under the agreement was taken possession of by them; and all of which they were deprived, according to their own state-

ments, were five and a half acres. The true measure of damages is therefore stated in the prayers. *Morris vs. Phelps,* 5 *Johns.,* 52 ; *Hopkins vs. Lee,* 6 *Wheat.,* 109, 118.

*George K. Shellman* and *J. E. R. Wood,* for the appellees.

Even if the cause of action in the amended *narr.* had been materially different, under the provisions of the Code relating to amendments, the plaintiffs could have made such an amendment, and it was not necessary to re-swear the jury. *Code, Article* 75, *secs.* 23, 24, 32 ; *Adams Express Co. vs. Trego,* 35 *Md.,* 59. In this case, the defendant did not ask for or desire a continuance.

The demurrer of the defendant was properly overruled. The *narr.* sets out the defendant's agreement to convey *the whole* of a certain tract of land, describing it, and the breach is sufficiently laid in alleging that he refused to convey *a part* of said land. As he was bound by his contract, as he admits, to convey all of said land, the failure to convey any part thereof, without just cause, was a plain breach of his contract, of which he must of necessity be aware, and it is immaterial as to the breach what particular part it was.

In reply to the appellant's objection to the offer of the record in the equity case between the parties, we submit that in that case, there had been an adjudication on all the points upon which the record was offered in evidence. *See Broom on Common Law,* (*L. L.,*) 271.

A decree in chancery operates as an estoppel equally with a judgment at law. *Butler's N. P.,* 153; *Groshon vs. Thomas,* 20 *Md.,* 234 ; *Cecil vs. Cecil,* 19 *Md.,* 72 ; *Beall vs. Pearre,* 12 *Md.,* 550.

The matters for which the equity record was offered were *res adjudicata;* and we further cite in support of this proposition, *Broom's Legal Max.,* (*2nd Ed.,*) 242, &c.; *Hynde's Case,* 4 *Rep.,* 71 *b.*

" The damages recoverable in a breach of contract are those which may fairly and reasonably be considered to arise naturally according to the usual course of things, from the breach of the contract itself, or which may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it." *Addison on Torts*, 1187, (*Am. Ed.*) ; *Hadley vs. Baxendale*, 9 *Exch.*, 341 ; *U. S. Telegraph Co. vs. Gildersleve*, 29 *Md.*, 249.

The same authorities also illustrate the established doctrine, that in addition to the general liability incurred from a breach of contract, as stated above, the communication of the special circumstances under which a contract may be entered into will entail a special liability for a breach of it. But independently of the usual liability in such a case, the defendant was specifically apprised at the time of the purchase, that the plaintiffs bought with the express purpose of erecting a saw-mill.

It is true the saw-mill was not erected, but that was owing to the defendant's default. In *Abbott vs. Gatch*, 13 *Md.*, 333, damages were allowed for the estimated rental value of a mill that was not built by the time agreed upon, for the period during which its erection was delayed.

The cases are analagous. In this case the rule of damages was the same as in *Abbott and Gatch*, as appears from the instructions given by the Court itself. *See Sedgwick on Dam.*, 79, 202, *et seq.*, 204, 205, *note* 1\*, *note* 1, 206, 207, \* *note* 1, *and* 234 ; *Marshall vs. Haney*, 8 *Md.*, 194 ; *Moore vs. Schultz*, 31 *Md.*, 422 ; *Strasburger and McLaughlin vs. Barber*, 38 *Md.*, 103; *Carroll vs. McTavish*, 13 *Md.*, 429, *and* 17 *Md.*, 1.

GRASON, J., delivered the opinion of the Court.

By a written agreement under seal, dated 10th October, 1867, and executed by the appellant and appellees, the former agreed to convey to the latter, upon the terms

therein specified, a certain parcel of land, which is particularly described in the agreement. The appellees brought an action of assumpsit against the appellant to recover for an alleged failure upon his part to convey or deliver possession of five and one-half acres, part of the land agreed to be sold, on which it was alleged there was a mill-site. After the jury had been sworn and the trial proceeded with, the appellees asked leave to amend the writ and *narr.*, by changing the form of action from assumpsit to covenant. The appellant objected to the amendment without a juror was first withdrawn, but the leave was granted and the amendment made without a juror being withdrawn, and the appellant excepted. The appellant then demurred to the amended *narr.*, and the demurrer was sustained. Another amended *narr.* was filed to which there was also a demurrer, which was overruled by the Court. Pleas were then filed and issues joined, and during the progress of the trial thirteen exceptions were taken to the rulings of the Court in admitting evidence to which the appellant had objected. Another exception was also taken by the appellant to the rejection of his first, second, third, fourth, fifth, eighth, tenth, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, nineteenth, twentieth, twenty-second, twenty-third and twenty-fourth prayers, and to the instruction given to the jury by the Court. A verdict was rendered in favor of the appellees, and the appellant filed a motion in arrest of judgment, assigning two reasons: first, because the amendment of the writ and *narr.* was made without withdrawing a juror, and, second, because the jury was not re-sworn upon the issues framed after the amendment was made. The motion in arrest was overruled and judgment entered on the verdict, and from the judgment so entered this appeal is taken. It was contended that the *narr* was defective in not having described with particularity *what part* of the land agreed to be conveyed, was withheld by

the appellant.  He was bound to convey all the land,
which by his agreement he had covenanted to convey, and
a failure to convey any part of it was a breach of his cove-
nant.   It was not, therefore, necessary in the assignment
of the breach of the covenant, to describe by courses and
distances, metes and bounds, what particular part of the
land had been withheld from the appellees, but an aver-
ment that the appellant had refused to deliver possession
of, or to convey the land agreed to be conveyed, was
sufficient.   The breach may be assigned in the negative of
the covenant generally, or according to its legal effect.   1
*Chitt. Plead.*, 120.   The demurrer was therefore properly
overruled.

The first exception and the motion in arrest of judgment
present the same questions, and will be considered together.
Article 75, sec. 23 of the Code, authorizes amendments to
be made in the pleadings at any time before the jury retire
to make up their verdict, and writs to be amended from one
form of action to another.  Section 24 provides that "no con-
tinuance shall be granted upon amendments of the plots,
writs, or any of the proceedings, but the case shall pro-
ceed as if no amendment had been made, unless the Court
shall be satisfied that the ends of justice require a continu-
ance."   Section 32 provides that "where an amendment is
allowed after the jury is sworn, and the Court shall con-
sider a continuance necessary to a fair trial of the cause, a
juror shall be withdrawn ; but if the Court considers that
a continuance is not necessary to a fair administration of
justice, the jury may proceed and try the case after the
amendment."   This section directs a juror to be withdrawn
after the pleadings are amended, only in such cases as the
Court may consider a fair administration of justice requires a
continuance.   "Whether a continuance should have been
ordered, after the amendment of the appellee's declaration
was matter of discretion, which is exclusively confided to
the Court in which the amendment takes place." *Adams*

*Express Company vs. Trego*, 35 *Md.*, 59. But if the question were properly before us for review, we should have to say that in this case the discretion vested in the Court below has been judiciously exercised, and that there is no error in the rulings of that Court in the first exception and on the motion in arrest of judgment.

The second exception was taken to the ruling of the Circuit Court in admitting in evidence the record of the Chancery suit in the Circuit Court for Frederick County, in which the present appellant was complainant and the appellees were defendants. One of the matters involved in that suit was the correct location of the lines of the parcel of land which the appellant had covenanted to convey to the appellees, and the decree in that case, not having been appealed from, finally and conclusively settled that question as between these parties. The decree in that case determined that the five and a half acres, the failure to convey which to the appellees, is the foundation of the suit now before us, were included within the lines and formed part of the sixty-eight and a half acres which the appellant was bound by his covenant to convey to the appellees. The parties to that suit and this being the same, and the subject-matter of the suit the same, the decree in that case was admissible as evidence in this. *Cecil vs. Cecil*, 19 *Md.*, 79; *Beall vs. Pearre, Admr.*, 12 *Md.*, 565. What is the correct rule for the measurement of the damages, in the event of the verdict being for the appellees, is the main question in the case, and is raised by several of the exceptions to the evidence, as well as by many of the prayers of the appellant. It is perfectly clear that no recovery could be had of the yearly rental or profits of the mill which never had an existence. There was no mill erected on the land, which was withheld by the appellant from the appellees, and, even admitting that the principal inducement to the purchase of the land was the existence of a mill-site thereon, and that the appellees purchased with

the intention of erecting a saw-mill thereon, yet, even if the whole of the land had been conveyed to the appellees, it is uncertain whether a mill would have been built, or, if built, that it would have obtained any custom or yielded any rents or profits to its owners. Such a claim is contingent, uncertain, remote, and altogether speculative. And this being so, the knowledge on the part of the appellant that the principal inducement to the appellees to purchase the property was the existence of the saw mill-site upon it, and that it was their intention to erect a saw-mill thereon, could not affect his liability by either lessening or increasing the damage. Where a party fails to perform his contract to convey land, the true measure of damages is the value of the land at the time of the breach of the covenant. *Cannell vs. McLean*, 6 *H. & J.*, 302; *Marshall vs. Haney*, 9 *Gill*, 260; *Same case*, 4 *Md.*, 508; *Crisfield vs. Storr*, 36 *Md.*, 150. In this case proof was offered tending to show that the appellant, some time after the sale of the land to the appellees, repurchased from Warrenfeltz, to whom he had conveyed them, the five and a half acres, and offered to convey them to the appellees, who refused to accept the conveyance and to execute a mortgage to the appellant in pursuance of their agreement, unless he would pay them one thousand dollars. If it be true that the appellant offered to convey and the appellees refused to accept the conveyance, (the purchase money not having been paid,) the appellees could only recover the fair annual rental value of the five and a half acres, in the condition they then were, during the time the possession was withheld from them by the appellant. The fact that this parcel, which was withheld by the appellant, had a mill-site upon it, may have added to its yearly rental value, and therefore evidence of the existence of a mill-site thereon was admissible. But evidence of the yearly rental value of a mill suitable for such a site was clearly inadmissible, and the fact that the appellant knew that the mill-site on the

land furnished the principal inducement to the appellees to make the purchase, or that he knew it was their intention to erect a mill thereon, was perfectly immaterial, and therefore inadmissible.

It follows, therefore, that the evidence objected to, and admitted in the third, fourth, sixth, seventh, ninth, twelfth, thirteenth and fourteenth exceptions was inadmissible, and ought to have been rejected. The evidence in chief of James O. Easterday, as contained in the third exception, being held inadmissible, it becomes unnecessary to notice the fifth exception. In the eighth exception, John Easterday proved that there was a mill-site on the property, withheld by the appellant from the appellees, but that he was not an expert on the subject of determining the existence of a mill-site, whereupon the appellant moved the Court to exclude from the jury, the evidence of said Easterday, in regard to there being a mill-site on said land, but the Court refused to exclude such evidence and the appellant excepted. A party may testify to the existence of a mill-site without being an expert, and the ruling of the Court in refusing to exclude the evidence referred to was correct. The evidence of Ziegler in regard to the mill-site was moved to be stricken out, because he swore that the fall of the stream between the dotted line and the red line on the plat "J. O E." was but two feet, seven inches, and because said fall did not constitute a mill-site. Although the fall between said lines may have been only two feet seven inches, the fall from the outline of the appellees' land to Z. the mill-site was proved to be over seven feet and the Court very properly refused to exclude the evidence of Ziegler from the jury, and the ruling in the tenth exception was therefore correct. For the same reason, the ruling of the Court in the eleventh exception was correct.

The fifteenth exception was taken to the rejection of certain prayers offered by the appellant, and to the instruction granted by the Court. From what we have before said

in regard to the measure of damages, it will appear that the true rule was laid down in the third, fourth, fifth, fourteenth and twentieth prayers, which were rejected, and should have been granted ; and in the sixth and seventh which were granted. The first, second and nineteenth prayers were properly rejected for the same reason, that the Court refused to exclude the evidence in the tenth and eleventh exceptions. The conclusion of the eighth prayer that the rental of such mill as might or could have been built on the mill-site, could not be received was perfectly correct, but that conclusion was to be drawn from facts stated in the prayer, and to be found by the jury, which we have stated to be perfectly immaterial, and should not have been submitted to the jury.

The decree in chancery determined what land the appellant was bound to convey to the appellees, and if he withheld any part thereof from them, it was a breach of his covenant, and the appellees were entitled to recover for the time during which the possession of any part thereof was withheld from them, nor were the appellees obliged to rescind the contract. The tenth, twelfth, fifteenth, sixteenth, twenty-second and twenty-third prayers were therefore properly rejected. The thirteenth prayer was properly rejected, for though the conclusion of it is correct, it is made to depend in part upon the knowledge on the part of the appellant, that the mill-site on the land was the inducement to the appellees to purchase, which we have shown was perfectly immaterial. This prayer was therefore properly rejected. The twenty-fourth prayer relates to the measure of damages, and as we have before stated what is the correct measure of damages, by which the jury is to be governed, it becomes unnecessary to say more of this prayer, than that it authorizes the jury to allow damages for the land withheld, from the date of the contract to the time of the sale under the decree, while we have shown that damages are only to be recovered from the date of the

contract, to the time when the appellant offered to convey the five and a half acres to the appellees, if the jury shall find such offer.    We think, therefore, that there was no error in rejecting this prayer.

The instruction granted by the Court, was clearly erroneous, because it authorized the jury, among other things, to allow as damages, the rental value of such a saw-mill, as was suitable and proper for such mill-site.    We have shown that such damages are contingent and speculative, and are not to be allowed.    The seventeenth prayer is not in the record, and was not referred to by the counsel in their arguments or briefs, and we must presume that it was correctly rejected.

As there was error in the rulings of the Circuit Court in the particulars to which we have referred, the judgment appealed from will be reversed and the cause remanded for a new trial.

*Judgment reversed, and*
*new trial awarded.*

(Decided 11th June, 1875.)