581 A.2d 1275

DeLawrence BEARD, et al.

v.

S/E JOINT VENTURE, et al.

No. 171, Sept. Term, 1989.

Court of Appeals of Maryland.

Nov. 13, 1990.

Reconsideration Denied Jan. 25, 1991.*

---

* The addendum to this opinion denying Motion for Reconsideration can be found in the next volume of the Maryland Reports and the Atlantic Reporter.

Jeffrey C. Taylor (James W. Salter, III, Tomes, Salter & Taylor, all on brief), Rockville, for petitioners.

Jeff Evan Lowinger (Elsie L. Reid, Steven J. Lewicky, Furey, Doolan & Abell, Chevy Chase, Charles V. Kirchman Wheaton), all on brief, for respondents.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE and CHASANOW, JJ.

RODOWSKY, Judge.

This case involves the measure of damages for the breach by vendors of a contract to construct a residence and then to convey the improved realty. The real estate market for the subject property was escalating during the potentially

relevant period. Purchasers sought specific performance or damages. Specific performance became unavailable when the vendors rejected the contract in bankruptcy. We shall hold that the purchasers' damages are not limited to certain out-of-pocket losses, as held by the courts below, but that the purchasers may also recover damages for loss of the benefit of their bargain. In computing damages the property may be valued as if improved as promised, and it may be valued as of the date when specific performance became unavailable, in contrast with valuation as of an earlier date when the vendors anticipatorially repudiated the contract.

The purchasers are the petitioners, DeLawrence and Lillian M. Beard (the Beards), who were plaintiffs in the circuit court. The vendors, respondents here and defendants in the circuit court, are Diana C. Etheridge (Etheridge) and Gene Stull (Stull), joint venturers in S/E Joint Venture. Etheridge is a licensed real estate agent and Stull is a home builder. S/E Joint Venture had acquired an unimproved lot in Piney Glen Farms subdivision in the Potomac section of Montgomery County for the purpose of building a home for speculation.

Protracted negotiations between the Beards and S/E Joint Venture led to a contract formed on March 17, 1986, under which S/E Joint Venture would construct a house on the lot and convey the improved premises to the Beards for $785,000. The contract in part provided "that the PURCHASER is purchasing a completed dwelling [and] that the SELLER is not acting as a contractor for the PURCHASER in the construction of the dwelling[.]" The contract recited that "the approximate date of completion of the improvements now scheduled by the SELLER is November 30, 1986." For a period of ninety days the contract was contingent on the sale of two residences, one the then residence of the Beards and the other that of Mrs. Beard's mother, who also was to occupy the home to be built.

Matters did not proceed smoothly. On March 16, 1987, the vendors, through counsel, terminated the contract. The

letter declaring the contract terminated invoked a provision under which

"the SELLER shall have the right to return the PUR-CHASER'S deposit and to declare this Contract null and void if, in the SELLER'S sole discretion, it determines that ... performance within 365 days from the date hereof will not be possible."

In May 1987 the Beards filed a two count complaint against respondents. It sought specific performance under count I and, in the alternative, damages for breach of contract in count II.

During the pendency of the action by the Beards, S/E Joint Venture sought the protection of Chapter 11 of the Bankruptcy Act. The Bankruptcy Court on April 8, 1988, ruled that it would approve rejection by S/E Joint Venture of its contract with the Beards. The order of the Bankruptcy Court that effected that ruling was passed on June 17, 1988, the last business day prior to the commencement of the nonjury trial of the subject action in the Circuit Court for Montgomery County.

In a written opinion the circuit judge found, on conflicting evidence, that the vendors had breached the contract by the purported termination of March 16, 1987. The trial judge concluded

"that it is implicit that before the right of termination can be exercised the defendants must have acted in good faith to try to complete construction of the house within the stated time period; this, in the court's judgment, they did not do."

The circuit court found that Stull "knew some two months after the inception of the contract that he would be unable to meet the time deadline." This was found to be "significant because defendants were aware that the plaintiffs and [Mrs. Beard's mother] had to sell their homes in order to meet their financial commitment[.]" The trial court also found undue delay in the performance of plumbing work,

which "had a ripple effect on the subsequent course of construction."

The trial judge did not address the specific performance claim, saying in a footnote: "As to count one Plaintiffs make no argument in their written argument, or otherwise, and the court treats the count as abandoned."

Itemizing claimed damages in their post trial memorandum, the Beards included $100,000 for "loss of bargain." Factually, the $100,000 figure is said to represent the excess of the value of the property, with the home completed in accordance with the contract, as of March 16, 1987, over the contract price. The plaintiffs undertook to prove the value of the property by calling Etheridge as their own witness. Plaintiffs' conclusion that $100,000 represents the difference between market value and contract price requires interpreting Etheridge's testimony. At times she seems to refer to the value of the house which S/E Joint Venture originally planned, and at times to the value of the house called for by the Beards' contract. The circuit court never reached this issue because it disposed of the Beards' contention on legal grounds.

Legally to support their loss of the bargain claim, the plaintiffs relied on *Horner v. Beasley*, 105 Md. 193, 65 A. 820 (1907). *Horner* was a purchaser's action against a vendor for breach of a contract to convey, for $1,200, improved realty worth $1,800. The vendor's defense was that title to the property was involved in litigation. Judgment for the plaintiff was reversed because of an error in the admission of evidence of value. This Court, however, approved a jury instruction that if

"the defendant acted in good faith in failing to perform the contract of sale, the plaintiff was entitled to recover only the amount of his deposit with interest and the expense if any incurred in the investigation of the title; but if they found that the defendant did not act in good faith then in addition to the amounts aforesaid the plaintiff could recover the excess, if any, of the market value

of the property, at the time of the sale, over the contract price."

*Id.* at 198, 65 A. at 822.

The Beards, also citing *Charles County Broadcasting Co. v. Meares*, 270 Md. 321, 311 A.2d 27 (1973), argued that, because the respondents were able to perform, their breach was in "bad faith," so that benefit of the bargain damages should be awarded. The trial court did not accept this contention, explaining that it did "not award any damages for loss of the benefit of the bargain[,] finding no evidence of bad faith in the sense that the termination was activated by malice, fraud or the like."

The circuit court awarded the plaintiffs $124,594 in damages, representing the deposit on the property ($75,000), a deposit for a security system ($2,000), a deposit for telephones and intercoms ($1,000), rental payments for substitute housing ($32,000), mortgage commitment fee ($4,250) and storage costs ($10,344).

All parties appealed to the Court of Special Appeals which, in an unreported opinion, modified the judgment and affirmed it as modified.[1] The intermediate appellate court, approving the trial court's analysis of the loss of bargain claim, reasoned that "[o]nce [the trial judge] found a breach on the Sellers' part but failed to find any evidence of fraud, malice or the like, [the trial judge] could not award damages in accordance with *Charles County Broadcasting* based on either good faith or bad faith."

We granted certiorari as to the following questions from the Beards' petition.

"1. Whether a seller of real estate who fails to exercise good faith in the performance of the sales contract is liable for the purchasers' loss of bargain?

---

**1.** The Court of Special Appeals eliminated the award of $10,344 in storage costs which represented an expense incurred by Mrs. Beard's mother. Our grant of certiorari did not include that issue.

"2.  Whether the measure of damages for loss of bargain is based on the value of the property at the time the seller improperly gave notice of termination or at the time it precluded specific performance of the contract by rejecting it in bankruptcy?"

## I

■■■■ Damages for breach of a contract ordinarily are that sum which would place the plaintiff in as good a position as that in which the plaintiff would have been, had the contract been performed.  These expectation interest damages embrace both losses incurred and gains prevented. See Restatement (Second) of Contracts § 347 (1981);  Restatement, Contracts § 329 (1932).  Here the circuit court undertook to apply an exception to the ordinary rule.  The exception traces to *Flureau v. Thornhill,* 2 W. Black. 1078, 96 Eng.Rep. 635 (K.B.1776).  In England, and in the diminishing number of American states that recognize *Flureau,* the exception applies only where, due to no fault on the part of the seller, there is an inability to convey good title.  In the case at hand respondents' breach had nothing to do with title to the property.  Further, under the trial court's findings, the inability timely to deliver a completed house, which motivated the wrongful termination of March 16, 1987, is not a "good faith" failure to perform within the meaning of the *Flureau* exception.  In any event, "good faith," per the *Flureau* rule, is not so all inclusive as to embrace any breach which was not "activated by malice, fraud or the like," as the trial judge said.  Thus, the trial court applied an erroneous legal standard when it refused to consider benefit of the bargain damages.

In *Flureau,* the plaintiff had purchased at auction a property that paid an advantageous rent in relation to the purchase price.  The seller, however, could not produce good title.  In the ensuing suit the court's instructions limited the jury to awarding the return of the deposit paid, plus interest; but the jury allowed an additional twenty

pounds. A new trial was ordered. The report of the judgment of De Grey, C.J., reads in full:

"I think the verdict wrong in point of law. Upon a contract for a purchase, if the title proves bad, and the vendor is (without fraud) incapable of making a good one, I do not think that the purchaser can be entitled to any damages for the fancied goodness of the bargain, which he supposes he has lost."

*Flureau,* 2 W. Black. 1078, 96 Eng.Rep. 635. The judgment of Blackstone, J., explained that "[t]hese contracts are merely upon condition, frequently expressed, but always implied, that the vendor has a good title." *Id.* at 1078–79, 96 Eng.Rep. at 635.

It has been recognized in England that the *Flureau* exception was an "anomalous rule" brought about by the difficulties in that country, as late as 1899 (if not later), "in shewing a good title to real property" and that the exception "ought not be extended to cases in which the reasons on which it is based do not apply." *Day v. Singleton,* [1899] 2 Ch. 320, 329 (C.A.).[2]

Although English courts have struggled over the scope of the *Flureau* exception, the English cases considering *Flureau* have all concerned some aspect of title. *See Hopkins v. Grazebrook,* 6 B. & C. 31 (K.B.1826) (vendor who knows he has no title, but expects to be able to procure it prior to sale cannot rely on *Flureau* exception); *Engell v. Fitch,* [1869] L.R. 4 Q.B. 659 (Ex.Ch.) (*Flureau* limitation on

---

**2.** The difficulties included the absence of a land register. The deeds evidencing the chain of title were delivered by the solicitor for the vendor to the solicitor for the purchaser. "Neither possession of the land nor possession of the deeds was a sufficient guarantee of a good title. Deeds might be suppressed intentionally, or as the result of mistake or accident." 15 W. Holdsworth, *A History of English Law* 173 (A. Goodhart & H. Hanbury ed. 1965) (footnote omitted).

In *Donovan v. Bachstadt,* 91 N.J. 434, 441, 453 A.2d 160, 164 (1982), the court attributes to Lord Westbury, a mid-nineteenth century Lord Chancellor, the description of a bundle of documents evidencing title as "difficult to read, disgusting to touch, and impossible to understand."

damages not available where failure to convey results from vendor's refusal to oust a tenant); *Bain v. Fothergill,* [1874] L.R. 7 H.L. 158 (1873–74) (overruling *Hopkins v. Grazebrook; Flureau* applies when inability to convey interest in mining royalty results from inability to get permission from lessor); *Day v. Singleton,* [1899] 2 Ch. 320 (C.A.) (*Flureau* limitation on damages unavailable in sale of leasehold, where vendor fails to use best efforts to obtain lessor's consent to sale); *In re Daniel,* [1917] 2 Ch. 405 (*Flureau* not applicable where difficulty in conveyance results from inability to obtain partial release of mortgage); *Braybrooks v. Whaley,* [1919] 1 K.B. 435 (*Flureau* not applicable where failure to convey relates to noncompliance with Emergency Powers Act, rather than title defect).

More recently, *Flureau* has been given a very narrow reading in England. In *Malhotra v. Choudhury,* [1979] 1 All E.R. 186 (C.A.), a partner in a medical practice, Malhotra, conveyed the medical office to the junior partner, Choudhury, and the latter's wife. The partnership agreement provided that, if Choudhury left the practice, Malhotra would have the option to buy back the property at fair market value. The next year Malhotra gave notice of dissolution of the partnership, exercised the option, and later brought an action for specific performance, which was denied. Two years later Malhotra sought damages. The trial court found that Choudhury could not convey good title because of his wife's refusal to join and, applying *Flureau,* limited the recovery to reliance damages. The Court of Appeal reversed, holding that the *Flureau* rule was an exception to be applied only where the vendor showed best efforts to make a good title. *Id.* at 199–201. The court reasoned that the origin of the exception virtually required that bad faith be defined as a failure to make best efforts, with no requirement for fraud, and that failure of the vendor to demonstrate good faith precluded the *Flureau* exception. *Id.*

With respect to this country, Professor Corbin summarizes:

"A great many courts in the United States have not been inclined to follow the English courts or to differentiate land contracts from other contracts. The rule they adopt is that, if the seller fails to convey the title that he contracted to convey, the buyer has a right to damages measured by the value of the land at the time it should have been conveyed, less the contract price as yet unpaid."

5 A. Corbin, *Corbin on Contracts* § 1098, at 525 (1964) (footnote omitted). "Some of the courts, however, have recognized the English rule...." *Id.* at 525–28 (footnote omitted). But even among American courts applying *Flureau*, "[i]f the seller in fact has title and refuses to perform his contract without excuse, the buyer has a right to damages." *Id.* at 529 (footnote omitted). Other treatises and commentators agree. *See* 3 American Law of Property § 11.67.a, at 168–69 (1952); J. Calamari & J. Perillo, *The Law of Contracts* § 14–30 (2d ed. 1977); D. Dobbs, *Law of Remedies* § 12.8 (1973); M. Friedman, *Contracts & Conveyances of Real Property* § 12.2(a)2 (4th ed. 1984); 8A G. Thompson, *Real Property* § 4478, at 451–52 (1963); 11 S. Williston, *Law of Contracts* § 1399 (Jaeger 3d ed. 1968).

The first mention of *Flureau* in the reports of this Court is in *Baltimore Permanent Bldg. & Land Soc'y v. Smith*, 54 Md. 187 (1880).[3] The land was Solomon's Island, de-

---

**3.** The early Maryland decisions involving purchaser's actions for breach of a contract to convey realty do not mention the *Flureau* rule. In *Cannell v. M'Clean*, 6 H. & J. 297 (1824), the reason for the breach does not appear in the opinion, and the original records of the action have not been preserved at the Hall of Records. The trial court's instruction limited the jury to awarding the deposit paid, with or without interest, in the jury's discretion. Judgment on verdict for the deposit, without interest, was reversed. This Court held that "the purchaser is entitled to the thing contracted for, at the price agreed upon, and consequently to the benefit of any increased value; which would be lost to him if the damages were restricted to the price or value at the time of making the contract." *Id.* at 301.

*Dyer v. Dorsey*, 1 G. & J. 440 (1829), was an action on a bond given by the vendor to the purchaser. The vendor had already conveyed by deed to the purchaser, but it developed that "[s]ome outstanding right

scribed in the contract as about "sixty-five acres." The vendor's retained land, however, surveyed at thirty-six acres. In the purchaser's damage action the trial court instructed that return of the deposit plus interest and expenses of title examination could be awarded together with benefit of the bargain damages. This Court reversed and remanded for a new trial. The "different rule" in England under *Flureau* was noted. *Id.* at 206. This Court traced the rule through commentators and noted that it had been followed in a great number of cases in England. Citing 2 Addison on Contracts § 529, the rule limiting recovery to reliance damages was said to apply where the vendor had " 'reasonable ground for believing that he was the owner of the property, and had the right to sell at the time he agreed to sell, but is prevented by an unexpected defect of title....' " *Id.* at 207. The opinion by Judge Cooley in *Hammond v. Hannin,* 21 Mich. 374 (1870), citing many cases in this country applying the English rule, was reviewed. This Court held that the jury should have been instructed that damages were limited to return of the deposit, interest and cost of investigating the title if the jury found

"that after [the vendor] had entered into said contract, the said defendant discovered that there was a large deficiency in the quantity of land ... and shall further believe that the non-execution [i.e. non-performance] of

---

to these lands existed in [the vendor's predecessor in title], but its precise nature and character d[id] not distinctly appear." *Id.* at 442. The condition of the bond was that the vendor would obtain a deed to the purchaser from the vendor's predecessors in title. It was held that the purchaser could not both retain the land and recover the full penal sum of the bond, which seems to have been equated with the value of the land. A judgment for the costs of curing the title was affirmed.

*Marshall v. Haney,* 9 Gill 251 (1850), approved loss of the bargain damages, with the subject property valued at the date of breach.

*Clagett v. Easterday,* 42 Md. 617 (1875), stated the rule to be that "[w]here a party fails to perform his contract to convey land, the true measure of damages is the value of the land at the time of the breach of the covenant." *Id.* at 628.

said agreement on the part of the defendant, was occasioned simply by its honest inability to make title to about sixty-five acres of land...."

54 Md. at 209 (referring to passage, quoted here, at 193).

*Hartsock v. Mort,* 76 Md. 281, 25 A. 303 (1892), and *Horner v. Beasley,* 105 Md. 193, 65 A. 820 (1907), both involving vendor's breaches, recognized that expectation interest damages were appropriate and the *Flureau* exception was not applied. In the former action the vendor refused to accept a take back purchase money mortgage that conformed to the contract. In the latter case the jury apparently rejected the vendor's explanation that the title was in litigation, where the contract price at the time of contracting was about two-thirds of the value. Thereafter this Court did not have occasion again to consider *Flureau* until the 1973 decision in *Charles County Broadcasting,* 270 Md. 321, 311 A.2d 27, discussed, *infra.*

The Court of Special Appeals has approved expectation interest damages for the vendor's breach of a contract to build a home and then to convey the improved premises. *See Fran Realty, Inc. v. Thomas,* 30 Md.App. 362, 354 A.2d 196 (1976) (holding vendor breached by attempted, unilateral rescission based on previously discoverable, subsurface conditions).

Respondents have no basis for invoking the *Flureau* exception because they do not even assert that inability to convey title produced their breach of the contract to convey. Respondents deny, however, that the *Flureau* rule applies so narrowly, and they cite *Charles County Broadcasting* in support. That case involved breach of a contract to sell the license of an FM radio station, subject to Federal Communication Commission (FCC) approval of the transfer of ownership and of a relocation of the transmitter. The subjects of the sale were the stock of a subsidiary corporation of the seller, certain equipment, goodwill, contracts and insurance policies, and a lease of realty to be assumed by the buyer. *See* Appellant Charles County Broadcasting Co.'s Record Extract at 62–69. The seller agreed to cooperate fully in

obtaining all needed approvals from the FCC, and it is that covenant which the seller breached. The buyer initially sought specific performance, to require the seller to sign a document needed for FCC approval, but, by the time of trial, the buyer elected damages under the prayer for further relief. The trial court awarded benefit of the bargain damages. On appeal the seller challenged that award, advancing a variety of reasons, none of which was that *Flureau* applied. This Court affirmed loss of the bargain damages.

The opinion in *Charles County Broadcasting* opened with a general discussion of specific performance law and of the award of damages in equity. It quoted *Hartsock v. Mort,* 76 Md. at 288–89, 25 A. 303, in turn quoting *Hammond v. Hannin,* 21 Mich. at 387, for the rule as to the measure of damages:

" 'If the vendor acts in bad faith,—as, if having title he refuses to convey, or disables himself from conveying,— the proper measure of damages is the value of the land at the time of the breach; the rule, in such case, being the same in relation to real as to personal property. But, on the other hand, if the contract of sale was made in good faith, and the vendor for any reason is unable to perform it, and is guilty of no fraud, the clear weight of authority is that the vendee is limited in his recovery to the consideration money (paid) and interest, with perhaps in addition, the costs of investigating the title.' "

270 Md. at 326, 311 A.2d at 31. After concluding that there was sufficient evidence of value to support loss of the bargain damages, the Court said that "in breach of a contract to sell, damages are based on value at the time the transfer was to be made, and not on contract price...." 270 Md. at 332, 311 A.2d at 34. *Charles County Broadcasting* concluded by saying: "As we pointed out earlier, loss of bargain damages are available when a vendor acts in bad faith, *Hartsock v. Mort, supra,* and may be recovered in a specific performance suit under a prayer for general relief...." 270 Md. at 334, 311 A.2d at 35.

Respondents' position necessarily has two steps, (1) that *Charles County Broadcasting* expands *Flureau* beyond problems of title, and (2) that respondents breached the subject contract in good faith. But we do not read *Charles County Broadcasting* to hold that loss of the bargain damages are not recoverable for a good faith breach of contract, other than where the breach results from certain problems involving title to realty. No party in *Charles County Broadcasting* argued that realty was involved there. This Court's quote of the damage rule from *Hartsock v. Mort* was appropriate. Part of that rule is that damages for breach of a contract to sell personalty are the same as those for a "bad faith" breach of a contract to convey realty.[4]

But, even if respondents were correct in their first step, *Charles County Broadcasting* refutes their second step. If the sellers' refusal to execute a document needed for FCC approval was "bad faith" in *Charles County Broadcasting*, then respondents' termination of the instant contract similarly is "bad faith" under the rule. *Charles County Broadcasting*, as well as all of the other authorities reviewed above, make clear that bad faith is not limited to "malice, fraud or the like." The standard applied by the trial court in the present case is not the law.

Thus, the trial court erred in failing to consider breach of the bargain damages.[5]

## II

As of what date should the premises be valued to determine any excess of value over the contract price? The answer turns on whether petitioners' claim for loss of the

---

**4.** We disapprove of any implication in *Charles County Broadcasting* that the *Flureau* exception is not limited to title problems that result in an inability to convey realty.

**5.** Respondents' argument that there was no finding of bad faith on their part is specious. The argument assumes that the trial court correctly defined and applied "bad faith."

bargain damages is viewed as asserted by count I or by count II of their complaint.

■ Count II asserts a cause of action at law for breach of contract and seeks money damages. As we have seen, the ordinary rule for computing loss of the bargain damages is to value the property at the time of breach. Breach by failure to perform usually occurs when the promised performance is due. Here we need not be concerned with the effect on damages of respondents' anticipatory repudiation. The outside date for substantial completion by respondents was 365 days from contract formation on March 17, 1986. The contract provision that permitted termination by the respondents if they were unable to perform within 365 days, assuming a good faith effort at performance in the interim, essentially limited the date for scheduling settlement. Consequently, the swing in the instant matter of a few days between the anticipatory repudiation and the time for conveyance is immaterial.

Etheridge valued a house on the site as of March 16, 1987, at $100,000 in excess of the Beards' contract price. Her testimony permits different inferences, as to whether she was referring to the house to be built for the Beards or to a house built to the specifications originally contemplated by the respondents, with only some of the Beards' modifications. As a result, even if valuation were as of March 1987, a remand would be required in this case.

Petitioners submit, however, that the property should be valued as of June 17, 1988, because, in effect, their claim for damages is asserted under count I of their complaint, and the award would be an exercise of equity power. Petitioners' theory is that damages are to be awarded in substitution for specific performance which became unavailable when the Bankruptcy Court approved rejection of the contract. That rejection eviscerated petitioners' then pending claim for specific performance. Respondents reply that damages in substitution for specific performance were abandoned at trial. Further, respondents deny that the

facts at hand, even absent rejection, present an appropriate case for specific performance.

## A

The effect of rejection of the contract in bankruptcy was presented to the circuit court in memoranda that the parties apparently prepared over the weekend between the Bankruptcy Court's order and the start of trial. The plaintiffs argued that the defendants, by rejecting, admitted that the vendors' performance was not excused by any breach attributed to the purchasers. The vendors argued that their only breach of contract was the rejection and that, should the purchasers claim on that breach, either the claim would have to be asserted in the Bankruptcy Court, or the order modifying the bankruptcy stay to permit the instant action would have to be modified. These contentions were mooted by the trial court's finding that it was the respondents who breached the contract by the March 16, 1987, attempted termination.

At trial five days after the rejection, plaintiffs' counsel sought to read into evidence from Etheridge's January 1988 deposition a valuation as of the time of the deposition. Defendants objected, specifying lack of relevancy. Plaintiffs argued that the court would have to determine the date of breach, and that, despite the March 16, 1987, termination letter, there was "evidence that the parties continued after that time ... to treat the contract as if it were still alive." Referring to the bankruptcy rejection counsel said: "My clients have sued for specific performance, and that was a viable claim in this suit until last Friday." Counsel submitted that a January 1988 valuation was not so remote as to lack any relevance in the fact-finding process. The court sustained the objection to the deposition excerpt. Plaintiffs then called Etheridge as an adverse witness. In the course of that examination Etheridge was asked to value the house on that date, June 22, 1988. The court, stating that it would be consistent in its rulings, sustained an objection.

Petitioners' claim for specific performance was not abandoned; it was federally preempted. Petitioners' attempt to prove damages in substitution for specific performance was not abandoned; it was blocked by an evidentiary ruling. That ruling accorded no validity to the theory that, because specific performance became unavailable contemporaneously with the start of trial, the property could be valued as of the time of trial for loss of the bargain damages.

### B

■ Respondents say that a court would not grant specific performance of this contract because supervision of construction, which was far from completed, would be too burdensome and complex, particularly in view of disputes over whether the house was or was not to contain certain features. One who promises to build a house and then to convey the improved premises cannot defeat specific performance by breaching the contract before construction is completed. Even if specific performance of the promise to build the building is not awarded, a court may order specific performance of the promise to convey the premises and enter a monetary decree for the cost of completion of the improvements in accordance with the contract. *See Burns v. Garey,* 101 Conn. 323, 125 A. 467 (1924); *Yonan v. Oak Park Fed. Savings & Loan Ass'n,* 27 Ill.App.3d 967, 326 N.E.2d 773 (1975); *Billy Williams Builders & Developers, Inc. v. Hillerich,* 446 S.W.2d 280 (Ky.1969); *Dixon v. Ober,* 141 N.J.Eq. 289, 57 A.2d 383 (1948). *See also* 5A A. Corbin, *Corbin on Contracts* § 1160, at 193 (1964); Restatement (Second) of Contracts § 358, comment *c,* illustration 4 (1981).

■ Damages measured by the cost of completion, coupled with specific performance, illustrate the maxim that, once equity has jurisdiction, it will grant complete relief. *See, e.g., Rocks v. Brosius,* 241 Md. 612, 652–54, 217 A.2d 531, 554–55 (1966) (purchaser awarded specific performance and damages for improper clearing of temporary haul road);

*Miller v. Talbott,* 239 Md. 382, 391–94, 211 A.2d 741, 747–48 (1965) (purchaser awarded specific performance and damages for delay); *Walzl v. King,* 113 Md. 550, 556, 77 A. 1117, 1119 (1910) (purchaser awarded specific performance and, because rents received by vendor after breach were recoverable in equity, purchaser's later law action for collection of rents barred by *res judicata*); *Archway Motors v. Herman,* 37 Md.App. 674, 687–88, 378 A.2d 720, 727–28 (1977) (vendor awarded specific performance and damages for betterments made to comply with housing code where violation notices issued after time set for closing of transaction).

■ It is also clear that equity may award loss of the bargain damages in substitution for specific performance when that remedy becomes unavailable after equity jurisdiction has been properly invoked. *See Charles County Broadcasting.*

## C

■ Where, as here, the purchaser sues for specific performance upon breach of a contract to convey realty, and specific performance becomes unavailable during the pendency of the action, the loss of the bargain damages, awarded in substitution for specific performance, may properly be computed by valuing the property at the time specific performance becomes unavailable. The rule for which petitioners contend is the rule in England and in those states in this country in which the issue appears to have been raised. Respondents have not referred us to any authority to the contrary.

In *Johnson v. Agnew,* [1979] 1 All E.R. 883 (H.L.), vendors sought specific performance of a contract that would have furnished funds sufficient to pay the indebtedness secured by liens on their property. That equitable relief became unavailable when the lienholders sold the property. The House of Lords held that if "the vendors acted reasonably in pursuing the remedy of specific performance, the

date on which that remedy became aborted (not by the vendors' fault) should logically be fixed as the date on which damages should be assessed." *Id.* at 896.

A full statement of the rationale for fixing damages later than the date of the breach is found in *Wroth v. Tyler*, [1973] 1 All E.R. 897 (Ch. D.), in which the court reasoned from the principle that damages should place the plaintiff in the same situation as if the contract had been performed.

"[I]f the contract had been performed, the plaintiffs would at the date fixed for completion have had the house, then worth £7,500, in return for the contractual price of £6,000. If in lieu of the house they had been paid £1,500 damages at that date, they could, with the addition of the £6,000 that they commanded, have forthwith bought an equivalent house. I am satisfied on the evidence that the plaintiffs had no financial resources of any substance beyond the £6,000 that they could have put together for the purchase of the defendant's bungalow, and that the defendant knew this when the contract was made. The plaintiffs were therefore, to the defendant's knowledge, unable at the time of the breach to raise a further £1,500 in order to purchase an equivalent house forthwith, and so, as events have turned out, mitigate their loss. Today, to purchase an equivalent house they need £5,500 in addition to their £6,000. How, then, it may be asked, would the award today of £1,500 damages place them in the same situation as if the contract had been performed? The result that would have been produced by paying £1,500 damages at the date of the breach can today be produced only by paying £5,500 damages, with in each case the return of the deposit. On facts such as these, the general rule of assessing damages as at the date of the breach seems to defeat the general principle, rather than carry it out."

*Id.* at 919. The court further said:

"[I]f ... damages are awarded in substitution for specific performance, the court has jurisdiction to award such damages as will put the plaintiffs into as good a position

as if the contract had been performed, even if to do so means awarding damages assessed by reference to a period subsequent to the date of the breach. This seems to me to be consonant with the nature of specific performance, which is a continuing remedy, designed to secure, inter alia, that the purchaser receives in fact what is his in equity as soon as the contract is made, subject to the vendor's right to the money, and so on. On the one hand, a decree may be sought before any breach of contract has occurred, and so before any action lies for common law damages; and on the other hand the right to a decree may continue long after the breach has occurred. On the facts of this case, the damages that may be awarded are not limited to the £1,500 that is appropriate to the date of the breach, but extend to the £5,500 that is appropriate at the present day, when they are being awarded in substitution for specific performance."

*Id.* at 921–22.[6]

Measuring damages later than the date of breach of the contract to convey is the rule in Missouri, where the courts look to value at the time of trial or judgment. *See Senn v. Manchester Bank of St. Louis,* 583 S.W.2d 119, 135 (Mo. 1979) ("Because [specific performance] is not available, the court alternatively must grant plaintiffs the value of the land at the moment they would have received it, that is, the time of trial.... [T]he trial court merely substituted money for the land itself as a means of making plaintiffs whole."); *Kay v. Vatterott,* 657 S.W.2d 80 (Mo.App.1983);

---

**6.** For the general power of equity to grant substitutionary legal relief in certain situations, the English cases refer to § 2 of the Chancery Amendment Act, 1858 (Lord Cairns' Act), 21 & 22 Vict., ch. 27, § 2, as carried forward by the Supreme Court of Judicature Act, 1873. *See Leeds Industrial Co-operative Soc'y v. Slack,* [1924] All E.R. 259 (H.L.). Lord Cairns' Act does not dictate the result in the above cases. A Maryland circuit court, whose equitable powers have been invoked, does not require statutory authority to award loss of the bargain damages as a substitute for specific performance. *See Charles County Broadcasting Co. v. Meares,* 270 Md. 321, 325 and n. 2, 311 A.2d 27, 30 and n. 2 (1973). And *see* 2 J. Story, *Commentaries on Equity Jurisprudence* § 799, at 129 n. (*b*) (13th ed. 1886).

*Dunning v. Alfred H. Mayer Co.*, 483 S.W.2d 423 (Mo.App. 1972).

In *Cameron v. Benson,* 295 Or. 98, 664 P.2d 412 (1983), a trial court awarded specific performance to purchasers and, in the event the vendor did not specifically perform, a money judgment. This judgment valued the property in 1980, thereby producing a damage figure $5,000 higher than produced by a valuation as of the breach in 1978. The Supreme Court of Oregon affirmed, holding that "[a]s with the value received when the court grants specific performance alone . . . this alternative money judgment should be measured as of the time of the directed performance." *Id.* at 105, 664 P.2d at 416.

Whether benefit of the bargain damages are available at all where there is a failure of title, and what valuation date should be used, were issues in *Donovan v. Bachstadt,* 91 N.J. 434, 453 A.2d 160 (1982). Vendors contracted to sell their home for $58,900 and to take back a $44,000 purchase money mortgage with interest at 10½% per year for thirty years. But the vendors could not produce good title, the purchasers obtained a specific performance decree, and, when title still could not be cured, the purchasers sued for damages. The purchasers had acquired a substitute home by a mortgage bearing 13¼% interest. The Supreme Court of New Jersey departed from its prior adherence to *Flureau* and allowed benefit of the bargain damages for the good faith failure of title. In measuring damages, the court structured a rule which included as a factor the value of a house that could be purchased with the promised financing, and in which "[t]he valuation should be at the time the defendant failed to comply with the judgment of specific performance." *Id.* at 446–48, 453 A.2d at 166–67.

The reasoning of these cases is persuasive.

■ On remand the Beards will be entitled to show the value of the property, improved by a house conforming to the plans and specifications of their contract, as of the date of rejection in bankruptcy of the contract with the Beards.

On remand the court may award under count I, in its discretion and in lieu of specific performance, benefit of the bargain damages as of June 17, 1988. Otherwise, the court shall proceed under count II and value the property for benefit of the bargain damages as of March 16, 1987. In other words, valuation as of the date of breach is a legal right. Valuation as of the date specific performance became unavailable is discretionary, but only to the extent that a denial of all equitable relief to the purchasers would be a proper exercise of discretion.

## III

Respondents assert that if benefit of the bargain damages are permitted then the damages which had been awarded by the trial court cannot also be awarded. Benefit of the bargain damages will be the amount by which the value of the premises on the appropriate valuation date exceeds the purchase price. The Beards' down payment on the house forms part of the price and is not represented in loss of the bargain compensation. Payments by way of rental for substitute housing were recognized as proper consequential damages, ancillary to the award of specific performance, in *Miller v. Talbott*, 239 Md. 382, 391–92, 211 A.2d 741, and are not inconsistent with benefit of the bargain damages.[7]

The mortgage placement fee and the deposits for electronic systems are out of pocket expenditures by the Beards that apparently are lost, in that the trial court neither treated them as part of the contract price nor as subject to the doctrine of avoidable consequences. On this record they are recoverable. But, those expenditures also represent part of what the cost of the finished home would

---

7. The evidence shows that the cost of substitute housing included in the judgment was for the period from November 1986 to the time of trial. Absent any cross petition for certiorari, we assume that the trial judge found an incidental breach as of November 1986 for which the purchasers chose to seek damages until they received the promised performance.

be in addition to the contract price. The expenditures should be added to the contract price, and that total subtracted from the value, as of the appropriate date, in determining the loss of the bargain.

JUDGMENT OF THE COURT OF SPECIAL APPEALS ON THE APPEAL OF DeLAWRENCE AND LILLIAN M. BEARD VACATED. CASE REMANDED TO THAT COURT FOR THE ENTRY OF AN ORDER AFFIRMING IN PART AND REVERSING IN PART THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY ON THE CLAIMS OF DeLAWRENCE AND LILLIAN M. BEARD, AND REMANDING THIS CASE TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY DIANA C. ETHERIDGE, GENE STULL AND S/E JOINT VENTURE.

MOTION FOR RECONSIDERATION DENIED.*

---

\* The addendum to this opinion denying Motion for Reconsideration can be found in the next volume of the Maryland Reports and the Atlantic Reporter.