708 A.2d 344

**James T. HALL, et al.**

v.

**LOVELL REGENCY HOMES LIMITED
PARTNERSHIP, et al.**

**No. 526, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

April 20, 1998.

Melvin J. Sykes (David P. Sutton, on the brief), Baltimore, for appellants.

Gerald J. Gaeng and Timothy Boucher (Rosenberg, Proutt, Funk & Greenberg, L.L.P., on the brief), Baltimore, for appellees.

Argued before DAVIS, THIEME and BYRNES, JJ.

BYRNES, Judge.

Appellants are four couples who purchased newly-constructed houses in the Kingsbrook Development in Frederick County, Maryland. After experiencing water and drainage problems with their properties, they brought suit in the Circuit Court for Frederick County against appellees, the builder of their houses and its general partners, alleging violations of the Maryland Consumer Protection Act, Maryland Code, (1990 Repl.Vol., 1997 Cum.Supp.), §§ 13–301 through 13–501 of the Commercial Law Article (the "CPA"), and asserting claims in contract, warranty, and tort.

From July 19, 1996 to August 16, 1996, the case was tried before a jury presided over by Judge Mary Ann Stepler. At the close of appellants' case, the trial court granted appellees' motion for judgment on the CPA claim. The remaining claims were submitted to the jury, which returned a verdict in favor of appellants for breach of contract, breach of express warranty, and negligent misrepresentation and awarded each appellant $1.00 in nominal damages. Appellants challenge the judgment on appeal, presenting three questions for review, which we have reordered and slightly rephrased:

I. Did the trial court err in ruling that appellants were limited to nominal damages for their property loss?

II. Did the trial court err in ruling that appellants were not entitled to damages for "loss of use and enjoyment" of their houses in addition to damages for injury to their property value?

III. Did the trial court err in failing to submit the Consumer Protection Act claim to the jury?

We find no reversible error on the part of the trial court. Accordingly, we affirm the judgment.[1]

---

1. Appellees noted a conditional cross-appeal, which we do not reach because of our disposition of the appeal.

6

In 1989, Kingsbrook Limited Partnership ("KLP") began developing a 217 acre tract of land that it owned in Frederick County into "Kingsbrook," a residential community. KLP divided the property into lots and sold them to appellee Lovell Regency Homes Limited Partnership ("Lovell Regency"). Lovell Regency constructed single-family dwellings on the lots and sold the improved residential properties to interested buyers.

Between July, 1992 and September, 1993, appellants James and Janice Hall, Mickey and Mary Ellen Mitchell, Richard and Linda Harcum, and Ronald and Lorene Pregenzer ("the homeowners") purchased from Lovell Regency lots improved by newly-constructed dwellings.[3]

After the homeowners moved into their new houses, they noticed that the streets in their section of Kingsbrook would flood after heavy rains or snow, that their yards collected water and stayed "soggy" for long stretches of time, and that their sump pumps continuously pumped out large volumes of water. The Halls found standing water and mud around the perimeter of the their house. Water accumulated in an un-paved portion of the Halls' basement. Their basement walls became discolored and "splotched" and developed cracks. Excessive moisture in their basement caused mold and fungi to proliferate. These water and drainage problems prevented the Halls from finishing their basement, adding a deck to their house, or fencing their yard. The other three families experienced similar problems with their properties: water in their basements, cracks in basement walls and floors, exterior wall cracks, and ground sinking. They, too, were unable to finish

---

2. The facts are recited in the light most favorable to appellants, as the prevailing parties below on the claims that are being appealed.

3. The dates of each family's purchase contract and settlement are as follows: (1) the Mitchells: July 26, 1992 and December 30, 1992; (2) the Halls: July 18, 1992 and April 23, 1993; (3) the Harcums: March 20, 1993 and September 17, 1993; (4) the Pregenzers: March 7, 1993 and September 28, 1993.

their basements and to use their properties as they had planned. The homeowners remained in their properties nonetheless.

In February, 1995, the homeowners filed the instant law suit against Lovell Regency and against Lovell Homes, Inc. and Lovell Regency Homes Corporation, the general partners in Lovell Regency.[4] Their complaint sets forth claims for negligence, negligent misrepresentation, breach of implied warranties, breach of express warranty, fraud, breach of contract, and violation of the CPA.

At trial, the homeowners presented evidence, including expert witness testimony, demonstrating that Lovell had misrepresented and warranted that their houses had been waterproofed; that Lovell had showed them and other prospective buyers a Camelot model house with a finished basement, thereby misrepresenting that the houses they were purchasing would be suitable for use in fully finished conditions; that Lovell's sales brochures misleadingly touted the ideal location and setting of the community; that Lovell expressly warranted that there were no water problems in the neighborhood and that the houses would contain dry, usable basements; and that Lovell breached its construction contracts by failing to waterproof the houses as promised, by building the houses in violation of certain zoning and building standards, by building the houses near or in a flood plain and on soil not suitable for construction of that sort, and by not building the houses in conformity with sound engineering standards but instead with structural defects that were exposing them to potential health hazards.

According to the homeowners and their expert witnesses, the defects in their properties were irreparable and their properties were uninhabitable. The homeowners called Peter Vidi, a real estate appraiser, to testify about damages. Mr.

---

4. We refer to appellees collectively as "Lovell."

Vidi opined as follows about the present fair market value of each family's property: [5]

> [T]he properties are for all intents and purposes not marketable to someone who understands the degree of risk that is involved in purchasing the properties ... [T]he values of the properties were negligible and that relative to their original market value, their fair market value, at their purchase prices, that they had lost all of their value, that the fair market value that they paid at the time that they paid it was not in my opinion a well informed buyer purchasing what they knew [the value] to be.

Mr. Vidi explained that when real property has a "zero" fair market value, the value is not measurable: "it has no quantification." He opined that because the present fair market value of each family's property was zero, each family had lost a sum equal to the total purchase price of its property plus the amount of any down payment made and the cost of any subsequent improvements to the property.

On cross-examination, Mr. Vidi acknowledged that he had not obtained any information about comparable sales of properties in the neighborhood and that because he considered that the defects in the properties could not be cured, he did not obtain estimates of repair costs. Mr. Vidi did not supply an opinion about the fair market values of the properties with the alleged defects at the times that they were purchased. He also did not express an opinion about the present fair market values of the properties without the alleged defects.

On direct examination, homeowner Richard Harcum was asked: "Do you know what the market value of your home is?" Mr. Harcum responded, "I'm not sure how to answer that right now. I know that I would not feel comfortable selling [my] house at market value, which is in the $220,000 to $230,000 range." When asked the basis for that testimony, Mr. Harcum stated, "Just my general knowledge of what

---

5. Throughout this opinion, our references to the "present" fair market values of the properties mean those values as of the time of trial.

houses like mine tend to sell for when they're up for sale." Later in Mr. Harcum's direct examination, the following colloquy ensued:

> MR. STEELMAN: If a willing and knowledgeable buyer was to be told that there's no problems to a house, there's no water problems, the community is beautiful, its everything in the brochures, what would you put the value of a comparable house like yours?

> MR. HARCUM: In a condition where everything's fine, I think I said that I would guess my house is around $220,000.00 to $230,000.00

The homeowners introduced into evidence the contracts of sales and settlement sheets for their properties.

At the close of the homeowners' case, Lovell moved for judgment on numerous grounds. The trial court ruled that the homeowners could not recover damages for emotional distress or punitive damages and reserved ruling on other issues raised in the motion. Subsequently, the trial court granted Lovell's motion for judgment on the CPA claim. It concluded that the homeowners had not presented cost of repair evidence and that they had not submitted evidence competent to show the difference between the fair market values of their properties with and without defects at a given point in time. On that basis, the court ruled that the homeowners' evidence was not legally sufficient to permit the jury to award contract, warranty, or tort damages for loss in fair market value measured under an "out of pocket" or "benefit of the bargain" test. Accordingly, they had not submitted proof that they had sustained actual injury or loss, which is necessary to support a private right of action under the CPA.

In its case, Lovell introduced evidence showing that it had inspected the homeowners' properties and that the water problems about which they complained, to the extent that they existed, could be repaired for a total sum of $10,000.00 to $12,000.00.[6]

---

6. Lovell had offered to make repairs; the homeowners rejected the offer.

**10**

The homeowners requested a jury instruction on damages for loss in fair market value. The trial court refused to grant the instruction, stating: "We just don't have [in evidence] two values at the same point of time to award either out of pocket or benefit of bargain ..." The homeowners also requested that the jury be instructed on damages for "loss of use and enjoyment" of their properties. The court denied that request as well, ruling that the evidence presented by the homeowners on "loss of use and enjoyment" was speculative. The court refused to grant an instruction requested by Lovell that would have directed the jury that if it found for the homeowners, it could award nominal damages only.

The trial court instructed the jury on damages as follows: I [ ... ] ruled that there was no evidence that could be submitted to the jury as a result of any loss in value or loss of use of the properties. Therefore if you return a verdict for any of the [homeowners] on any of their claims, you may award such [homeowners] those damages that compensate them for any actual cost of repair to their properties. If, however, you return a verdict for any of the [homeowners] on any of their claims, but you do not specifically find that such [homeowner] has proved actual costs of repair damages, you may not award such [homeowner] damages for any other alleged injuries. In this situation, the amount of the verdict would be for $1.00 to each [homeowner].

What this means is, if you find that .... there is evidence, by a preponderance of the evidence, of damages of repair, then you proceed to make that finding. If you find that the [homeowner] has not shown, by a preponderance of the evidence, damages of repair, but you still find [Lovell] liable, then you enter what we call nominal damages, and that would be for $1.00. That is, if you find that there is liability.

The jury deliberated and returned a verdict against the homeowners and in favor of Lovell on the claims for negligence, fraud, and breach of implied warranties. It found for the homeowners and against Lovell on the claims for breach of

contract, breach of express warranty, and negligent misrepresentation and awarded nominal damages. This appeal followed.

## DISCUSSION

### I

The homeowners argue that the trial court erred in instructing the jury that it could not award damages for loss in fair market value of their properties or for "loss of use and enjoyment" of their properties and in directing the jury, in effect, to award nominal damages if it found in their favor on any of the claims. Lovell counters that the trial court correctly ruled that the homeowners did not present evidence legally sufficient to allow the jury to award those types of damages and that it properly instructed the jury in accordance with that ruling.

In reviewing the propriety of a trial court's granting of a particular jury instruction or refusal to grant an instruction, our task is to determine whether the instruction at issue was a correct exposition of the law, whether it was accurate in light of the evidence before the jury, and whether, if a requested instruction was refused, its substance was fairly covered by the instructions that were actually given. *Rustin v. Smith*, 104 Md.App. 676, 679–80, 657 A.2d 412 (1995). In this case, the instruction at issue incorporated the court's prior ruling on damages. The compound nature of the instruction means that, in passing on whether the court's instruction was accurate in light of the evidence before the jury, we must undertake the same analysis as the trial court and decide whether the evidence, viewed in the light most favorable to the homeowners, was legally sufficient to permit the jury to award damages for loss in value or "loss in use of enjoyment" of the properties. *See Toft v. Pimentel*, 108 Md.App. 206, 222, 671 A.2d 99 (1996). We embark upon our task by briefly reviewing the measures of damages applicable to the homeowners' claims.

**12**

 In tort actions founded on misrepresentation, "the aim of compensation ... is to put the buyer, as nearly as practicable, in the position he would have been had he not been defrauded." *Beardmore v. T.D. Burgess Co.,* 245 Md. 387, 390, 226 A.2d 329 (1967). In fraudulent or negligent misrepresentation actions in which a plaintiff has purchased real property that was not as it was represented to be, Maryland law applies a "flexible" measure of damages that allows the plaintiff to chose between two tests for damages. *Hinkle v. Rockville Motor Co.,* 262 Md. 502, 511, 278 A.2d 42 (1971); *Ward Development Co. v. Ingrao,* 63 Md.App. 645, 659, 493 A.2d 421 (1985). The preferred test is the "out of pocket" rule, *Weisman v. Connors,* 69 Md.App. 732, 749–50, 519 A.2d 795 (1987), *rev'd on other grounds,* 312 Md. 428, 540 A.2d 783 (1988), which is "the difference between the amount of the purchase price the buyer has paid and the actual value of the property on the date it was sold." *Beardmore,* 245 Md. at 390, 226 A.2d 329. The other acceptable measure of damages for misrepresentation is the "benefit of the bargain" test, in which damages are "the difference between the actual value of the property at the time of making the contract and the value that it would have possessed if the representations had been true." *Id.; see also Call Carl, Inc. v. BP Oil Corp.,* 554 F.2d 623, 629 (4th Cir.1977), *cert. denied,* 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 280 (1977)(applying Maryland law).

 The amount of damages recoverable for breach of contract is that which will place the injured party in the monetary position he would have occupied if the contract had been properly performed. *Beard v. S/E Joint Venture,* 321 Md. 126, 133, 581 A.2d 1275 (1990), *reconsideration denied,* 322 Md. 225, 587 A.2d 239 (1991); *Casualty Ins. Co. v. Messenger,* 181 Md. 295, 301–02, 29 A.2d 653 (1943); *National Micrographics v. OCE–Industries,* 55 Md.App. 526, 538, 465 A.2d 862 (1983), *cert. denied, Oce-Indus. v. National Micrographics,* 298 Md. 395, 470 A.2d 353 (1984); *Dialist Co. v. Pulford,* 42 Md.App. 173, 179, 399 A.2d 1374 (1979). In a breach of contract action for defective performance of a real estate construction contract, the primary measure of damages

is the cost of repairing or remedying the defect. *Andrulis v. Levin Construction*, 331 Md. 354, 370, 628 A.2d 197 (1993); *Gilbert Const. Co. v. Gross*, 212 Md. 402, 411, 129 A.2d 518 (1957); *Ray v. Eurice*, 201 Md. 115, 129, 93 A.2d 272 (1952). If the plaintiff presents proof that repairing the defect in the property would be infeasible or impracticable, however, an acceptable secondary measure of damages is the loss in value of the property caused by the breach, *i.e.*, the difference between the fair market value of the property without the defect and the fair market value of the property with the defect. *Gilbert*, 212 Md. at 411, 129 A.2d 518; *Mullan v. Hacker*, 187 Md. 261, 270, 49 A.2d 640 (1946).

Damages for breach of contract "seek to vindicate the promisee's expectation interest." *Andrulis*, 331 Md. at 374, 628 A.2d 197. Expectation interest damages include losses sustained, *i.e.*, "out of pocket damages," and gains lost, *i.e.*, "benefit of the bargain" damages. *Beard*, 321 Md. at 133, 581 A.2d 1275. Compensatory damages for breach of contract may be recovered subject to "limitations of remoteness and speculativeness." *Dialist*, 42 Md.App. at 179, 399 A.2d 1374. Such damages "must be proved with reasonable certainty, and may not be based on speculation or conjecture...." *Asibem Assoc., Ltd. v. Rill*, 264 Md. 272, 276, 286 A.2d 160 (1972). Finally, the measure of damages for the breach of an express warranty in the sale of real property is the same as the measure of damages for breach of contract. *Hooton v. Mumaw Plumbing*, 271 Md. 565, 573, 318 A.2d 514 (1974) (applying contract law and stating that the " 'measure of damages [in a breach of warranty action] is that amount of money which will render that which is guaranteed to be as warranted.' ")(quoting *Correlli v. National*, 240 Md. 627, 632, 214 A.2d 919 (1965)).

In the case at bar, the contract, tort, and warranty damages sought by the homeowners and potentially recoverable by them were essentially identical. Because the homeowners maintained that the defects in their properties could not be cured, they did not introduce cost of repair evidence and

instead sought to recover contract and warranty damages for the diminution in the fair market values of their properties caused by Lovell's breach, under the "out of pocket" or "benefit of the bargain" tests. They also sought damages in tort for loss in value using the same "out of pocket" and "benefit of the bargain" tests. The valuation evidence on which the homeowners based these damage claims consisted of the "zero" present fair market values of their properties with defects (testimony of Mr. Vidi); the estimated "$220,000.00 to $230,000.00" present fair market values of their properties without defects (testimony of Mr. Harcum); and the sums that they paid to purchase their properties from Lovell (contracts and settlement sheets).

The trial court's ruling on damages for loss in fair market value rested on the following considerations and decisions about the state of the evidence: 1) the contract prices for the properties were not competent evidence to establish their fair market values without defects at the times that they were purchased; 2) no evidence was introduced to show the fair market values of the properties with defects at the times that they were purchased; and 3) Mr. Harcum's testimony was not competent to establish the present fair market value of properties like his and like the other three properties but without defects, as that testimony was speculative. The court reasoned that because the only admissible valuation figure introduced into evidence by the homeowners was Mr. Vidi's testimony that the present fair market values of their properties with defects was zero, the evidence was not legally sufficient to permit the jury to award damages for loss in fair market value. Even if the contract prices for the properties constituted competent evidence of their values without the alleged defects when they were purchased by the homeowners, the loss of value evidence remained legally insufficient because the only figures in evidence for the fair market values of the properties with the alleged defects pertained to the present and not to the times of the purchases. In short, the case was missing valuation evidence showing the difference between the

fair market values of the properties with and without defects at one point in time.

The homeowners assign several errors to the trial court's damages ruling that together comprise their argument that loss in value damages was a jury issue, contrary to the trial court's instruction. First, they contend that the court erred in ruling that the fair market values of their properties in non-defective conditions at the times of the purchases could not be proven by their contract prices, as reflected on their settlement sheets. Lovell counters that the trial court correctly ruled that the evidence of contract (or settlement) prices paid was incompetent to establish the values of their properties without defects at their times of purchase, under *Andrulis v. Levin Construction Co., supra.*

We examine *Andrulis* in some detail because it has broader relevance to the issues presented. In that case, purchasers of a newly constructed residential dwelling claimed that the builder had breached statutorily implied warranties either by constructing their house without waterproofing and a foundation drainage system or by constructing their house with defects in waterproofing and in the drainage system. In a bench trial, the circuit court found as a fact that the builder had not installed a drainage system. The court did not award damages for the sum sought by the purchasers to install such a system, however, because it found that the cost to cure would be unreasonably high. Instead, it awarded the purchasers one-half of the amount they sought, as "diminution in value" damages. On appeal, the builder argued that there was no evidence to support that damage award and that nominal damages should have been awarded instead. *See, e.g., Asibem,* 264 Md. at 276, 286 A.2d 160 (if plaintiff in breach of contract action fails to prove compensatory damages he is only entitled to recover nominal damages). In an unreported opinion, we reversed, holding that the trial court had erred in ruling that the cost of cure was unreasonable.

The Court of Appeals, affirming in part and reversing in part, explained that the ordinary "cost of repair" measure of

damages in a defective performance breach of contract action is limited by the economic waste doctrine, which provides that, if the breaching party proves that the cost to repair the defect is such as will result in unreasonable economic waste, the proper measure of damages becomes the difference between the fair market value of the property as contracted for (without the defect) and as performed (with the defect). In an action involving improvements to real estate, whether repair will produce economic waste is a question of "disproportionality" that must be determined by comparing the cost to cure to "any difference between the value of the property after the corrective work is done with the value of the property absent the corrective work." *Andrulis*, 331 Md. at 374–75, 628 A.2d 197.

The Court in *Andrulis* held that the trial court erred by applying the doctrine of economic waste without ascertaining those values. In its discussion of the valuation evidence that the trial court needed to consider when comparing the cost of repair to any difference between the value of the property with the corrective work and the value of the property without the corrective work, the Court observed:

> The trial court sought to supply the missing evidence of values by substituting the reaction of a hypothetical buyer, armed in negotiations with the knowledge that the foundation drainage system is defective. That substitution constituted speculation. **Nor should we assume that the Contract price represents the value of the premises, as warranted, and that the Contract price, less the cost of a drainage system as estimated by [the purchasers' expert witness] represents the value of the premises without a drainage system.** It may be that the value of [the purchasers'] house, without a drainage system, is depressed by more than the cost of the corrective work. It may be that buyers of this class of property in Montgomery County would prefer to purchase a code-complying house, rather than to endure the aggravation of having the corrective work done. There is no evidence on these points.

*Id.* at 375, 628 A.2d 197 (emphasis supplied). In the case at bar, Lovell maintains that the comments highlighted above support the trial court's ruling that evidence of the contract prices paid for the homeowners' properties was not competent to establish their fair market values without defects at the times they were purchased. We disagree.

The generally accepted meaning of "fair market value," as defined in condemnation cases, is "the price as of the valuation date for the highest and best use of the property which a [seller], willing but not obligated to sell, would accept for the property, and which a [buyer], willing but not obligated to buy, would pay...." Md. Ann.Code (1996 Repl.Vol.), § 12–105 of the Real Prop. Article. This definition has been adopted in contract cases involving real estate transactions. *See Asibem*, 264 Md. at 277, 286 A.2d 160. The admission of evidence of contract price to show fair market value is within the sound discretion of the trial judge. *Maryland Community Developers, Inc. v. State Roads Commission*, 261 Md. 205, 209, 274 A.2d 641 (1971); *City of Baltimore v. Schreiber*, 243 Md. 546, 551, 221 A.2d 663 (1966); *Baltimore v. Smith & Schwarz Brick Co.*, 80 Md. 458, 473, 31 A. 423 (1895).

The Court in *Andrulis* neither stated nor implied that the contract purchase price of real property may never be competent evidence of its fair market value at the time of sale. There is case law in Maryland that holds that damages for breach of a contract to convey real property must be based on fair market value at the time of the breach and not on contract price. *See Clagett v. Easterday*, 42 Md. 617, 628 (1875). That law is inapposite, however, as the non-performance of the contract means that there is no evidence that a willing but not obligated buyer in fact purchased the property from a willing but not obligated seller for that price. In the case *sub judice*, that evidence existed. Proof of the contract prices paid by the homeowners for their properties in what they thought were non-defective states was not *conclusive* evidence of the properties' fair market values. It was *competent* evidence for consideration by the jury nonetheless. As we shall explain

later in our discussion, however, any error on the trial court's part in ruling this evidence inadmissable was harmless.

The homeowners next contend that the trial court erred in ruling that they did not present competent evidence of the present fair market values of their properties without the alleged defects. They advance four sub-arguments to support their contention. First, they maintain that these values were not relevant because the "out of pocket" damages test relates to values as of the time of sale, not as of the time of trial. The homeowners are correct that, to the extent that they were seeking "out of pocket" damages, values as of the time of trial were not relevant. "Out of pocket" damages for loss in fair market value are determined as of the time of the transaction which, in this case, was the date of the purchase of each piece of property. Yet, the homeowners were seeking damages under the alternative "benefit of the bargain" test as well. Because damages under that test may account for loss in value of an appreciating asset, they may be determined as of the date of the transaction or thereafter. Accordingly, the trial court properly considered the question whether there was competent valuation evidence relating to a point in time after the sales.

The homeowners also argue that the trial court "failed to give effect to the venerable presumption of continuance of a given state or condition," which would have permitted the jury to conclude that the present fair market values of the properties without defects were the same as the contract prices paid for the properties at the times that they were purchased. This argument has no basis in law or reality. The homeowners cite two cases to support the proposition that the value of real estate is a "given state or condition" that the law will presume will continue into the future: *Burgess v. Lloyd*, 7 Md. 178, 199 (1854), and *Hammond's Lessee v. Inloes*, 4 Md. 138, 172 (1853). Both cases concern a presumption of continuation of title to real property. They do not apply any such presumption of continuation to property values.

In *Stitzel v. Kurz*, 18 Md.App. 525, 308 A.2d 430, *cert. denied*, 269 Md. 761 (1973), we explained the presumption at issue as follows: .

> When it is shown that a condition existed at a certain time, **and the condition is one which by its nature is relatively permanent, rather than transitory or changeable,** it is rational to infer that the same condition existed before and after the time shown, for a length of time reasonably consistent with the circumstances, unless there is evidence from which a change in the condition could reasonably be inferred.

*Id.* at 538, 308 A.2d 430 (emphasis supplied). The value of a piece of real estate is not "a condition ... which by its nature is relatively permanent." To the contrary, property values are by nature inconstant, changing, and highly variable. It would have been improper for the trial court to have instructed the jury that it could derive valuation figures for the present fair market values of the properties without defects by presuming that their fair market values as of their purchase dates continued into the future.

Next, the homeowners maintain that the trial court erred in ruling that Mr. Harcum's testimony about the present fair market values of their properties without defects was speculative and thus legally insufficient to support their damages claim.[7] We are mindful in addressing this issue that a trial court is vested with substantial discretion in the reception or rejection of evidence. *State v. Conn*, 286 Md. 406, 425, 408 A.2d 700 (1979); *Impala Platinum v. Impala Sales*, 283 Md. 296, 332, 389 A.2d 887 (1978), and cases cited therein.

In *Webster v. Archer*, 176 Md. 245, 4 A.2d 434 (1939), the Court of Appeals explained:

> [O]ne 'having sufficient knowledge on the subject and acquainted with the land in question' may be permitted to express an opinion as to the value of land, even though he is

---

7. Neither the Halls, the Mitchells, nor the Prezengers testified about the present fair market values of their properties without defects.

not an expert or specially qualified by training and experience to value land. But it is implicit in that rule that it must appear that even such a witness must have some knowledge of land values in the neighborhood of that which he is asked to value ... otherwise his valuation would not be a reasoned opinion but a mere conjecture or guess. *Id.* at 256–57, 4 A.2d 434 (quoting *Baltimore v. Smith & Schwarz Brick Co.,* 80 Md. 458, 472, 31 A. 423 (1895)). As we stated in *Anderson v. Sawyer,* 23 Md.App. 612, 618, 329 A.2d 716 (1974), "the opinion or conclusion of an expert or lay witness is of no greater probative value than that warranted by the soundness of his underlying reasons and facts."

We note that the comment by Mr. Harcum that the homeowners contend was competent evidence of the present fair market values of their properties without defects was not elicited in response to a question on that topic. Rather, it was a side remark given in answer to the question whether he knew the present fair market value of his house with its defects. When Mr. Harcum was asked the basis for his observation that the "market value" of "a comparable house" without defects "is around $220,000.00 to $230,000.00," he cited only his "general knowledge of what houses like mine tend to sell for," which he characterized as a "guess." There was no evidence from Mr. Harcum or from any extrinsic source showing that Mr. Harcum was familiar with or had any knowledge about non-defective properties in the neighborhood that were similar to his property and, further, that he was informed about sales of any such properties and the sums for which the properties had been sold. (In fact, Mr. Harcum's testimony that the approximate value he would assign to a "house" like his "[i]n a condition where everything's fine" was not expressed in terms of a comparable property in that neighborhood.) In the absence of competent foundation evidence for his opinion, the trial court did not abuse its discretion in ruling that Mr. Harcum's testimony was just as he described it: a "guess."

In the final prong of their four-pronged challenge to the trial court's ruling that they did not introduce competent

evidence of the present fair market values of their properties without defects, the homeowners argue that those valuations were irrelevant to the "benefit of the bargain" damages that they sought; they "were entitled to a home worth what they paid for it and to compensation for what they did not but should have obtained." This argument misconceives the nature of the loss in value damages for which the law allows recovery in contract, warranty, and tort actions such as this. It also leads us back to our examination of *Andrulis*.

■■■ As we have explained, under the "benefit of the bargain" test, a plaintiff may be compensated for the lost benefit of his bargain by receipt of a sum in damages equal to the difference between the value of the property in its "as represented" condition and the value of the property in its "as actually existed" condition. A plaintiff seeking damages under the "benefit of the bargain" test might present evidence showing that, but for the defendant's misrepresentation, he now would own property worth "x" when in fact he now owns property worth "x minus y." Alternatively, he might present evidence showing that, but for the defendant's misrepresentation, he would have purchased property worth "x" when in fact he purchased property worth only "x minus y." (In the latter case, "out of pocket" damages and "benefit of the bargain" damages would be the same.)

Although spoken in the context of a discussion of the doctrine of economic waste, the Court's words in *Andrulis* implicitly convey the principle that to recover damages for loss in fair market value of real property, whether under the "benefit of the bargain" test or the "out of pocket" test, and whether in contract, warranty, or tort, the plaintiff's evidence must establish the difference between two like valuation variables *at one point of time.* It is the difference between two valuation figures at one point in time that quantifies the plaintiff's "lost benefit" or his "out of pocket" loss. On the facts before it, the *Andrulis* Court explained that a loss in fair market value equation using as valuation variables the contract price of the premises as warranted and the contract

price of the premises less the cost of a drainage system would not be reliable because "the value of the . . . house, without a drainage system, [may have been] depressed by more than the cost of the corrective work." *Andrulis*, 331 Md. at 375, 628 A.2d 197. In other words, an equation comparing the fair market value of property as represented at the time of purchase to the actual fair market value of the property at a later point in time is not workable, as the latter value may be accounted for by factors other than the absence of the represented attributes of the property. Accurate determination of loss in fair market value caused by a defendant's breach or wrongdoing and not by other factors requires comparison of valuation figures from one point in time.

If the trial court had ruled the evidence of the contract purchase prices competent to show the fair market values of the properties without defects on their purchase dates, the homeowners' valuation evidence would have consisted of those figures and the zero present fair market values provided by Mr. Vidi. The jury could not have determined loss in value damages under the "out-of-pocket" test from these figures alone. Without evidence of the fair market values of the properties with defects at the times of the purchases, "out of pocket" damages were not measurable. Likewise, the jury could not have used these figures to determine damages under the "benefit of the bargain" test because there was no evidence of the present fair market values of the properties without defects (needed to permit comparison between "present" values) and there was no evidence of the fair market values of the properties with defects at the times that they were purchased (needed to permit comparison between "time of purchase" values). To award loss in value damages, the jury would have had to resort to improper speculation about a missing valuation variable.

The trial court correctly ruled, consistent with the reasoning of the Court in *Andrulis*, that the homeowners failed to present evidence legally sufficient to allow the jury to award loss in fair market value damages in contract, warranty,

or tort. *See, e.g., Dassing v. Fred Frederick*, 240 Md. 621, 214 A.2d 925 (1965) (directed verdict properly entered in fraudulent misrepresentation action by purchaser of vehicle against seller where purchaser failed to produce evidence of the actual value of the vehicle at the time of purchase, a variable needed to prove the out of pocket damages they sought). The court's jury instruction in accordance with that ruling was proper as well.[8]

## II

The homeowners also contend that the trial court erred in not allowing the jury to award damages for "loss of use and enjoyment" of their properties. In support, they cite cases in nuisance, trespass, and negligence that involve harm caused directly or indirectly to real property. Lovell responds that damages for "loss of use and enjoyment" are not recoverable under any of the legal theories on which the homeowners sued and that they also are not recoverable because they are in the nature of mental and emotional distress damages.

In an action alleging a temporary nuisance, the plaintiff may recover damages for the decrease in the value of the use or rental of his property and for "the substantial invasion of normal and comfortable enjoyment of [his] property," including the illness of a household member brought about by the nuisance. *Gorman v. Sabo*, 210 Md. 155, 163, 122 A.2d 475 (1956) (nuisance created by defendant playing blaring

---

8. It appears doubtful that the jury would have awarded damages for loss in fair market value even if the homeowners had introduced competent evidence to demonstrate one or both of the missing valuation figures (fair market value with defects at purchase date or fair market value without defects at present). The jury found against the homeowners on their claim for breach of implied warranties under Md.Code Ann. (1996 Repl.Vol.), § 10–203 of the Real Prop. Article. Those implied warranties include fitness for habitation, construction according to sound engineering standards and in a workmanlike manner, and freedom from faulty materials. In so doing, the jury rejected the theory on which the homeowners' claims rested: that their properties were irreparable and uninhabitable. Mr. Vidi's zero present fair market value opinion, which was essential to the homeowners' loss in value damages claim, rested on that rejected premise as well.

radio music day and night); *see also Green v. Shoemaker,* 111 Md. 69, 73 A. 688 (1909) (plaintiff entitled to recover damages for physical injuries due to nervousness and fright caused by defendant's blasting activities). In an action for trespass or negligence in which the defendant's conduct has caused temporary harm to real property, damages may be awarded for the cost of restoring the property to its previous state and for the value of the lost use of the property during the repair period. *Superior Construction Co. v. Elmo,* 204 Md. 1, 12, 102 A.2d 739 (1954) (plaintiffs who were forced to vacate residence when debris created by construction on adjacent land entered property were entitled to recover restoration costs and damages for loss of use of property, calculated based upon minimal rental value of property during vacancy period); Restatement (Second) of Torts § 929 (1977).[9] When a private defendant's tortious conduct has permanently harmed property, the proper measure of damages is the difference between the fair market value of the property before the injury and after the injury "together with such loss as . . . sustained, if any, in the usable value of the property . . ." *Havre de Grace v. Maxa,* 177 Md. 168, 182, 9 A.2d 235 (1939).

The case *sub judice* differs qualitatively from those cited by the homeowners because it does not concern tortious injury to real property. The homeowners did not claim (nor could they have claimed) that Lovell wrongfully interfered with their peaceful use and enjoyment of their undisturbed properties or that Lovell tortiously harmed their intact properties. The injuries for which the homeowners sought damages were not injuries to property; rather, they were pecuniary, *i.e.,* injuries to their financial interests in their real estate transactions with

---

**9.** A legal rule similar to the economic waste doctrine in contract cases applies to tort damages for injury caused to property. If restoration is impracticable or the cost of restoring the injured property to its original condition is " 'disproportionate to the diminution in the value of the land caused by the trespass,' " damages are measured by the difference in the value of the land before and after the harm, " 'unless there is a reason personal to the owner for restoring the original condition.' " *Superior Construction Co. v. Elmo, supra,* at 9, 102 A.2d 739 (quoting Restatement (Second) of Torts § 929 cmt. b (1977)).

Lovell. The homeowners were entitled to seek damages for pecuniary losses caused by Lovell's breach of contract or negligent misrepresentation and for consequential pecuniary losses that could be proven with reasonable certainty and not on the basis of speculation or conjecture. *See Asibem Assoc., Ltd. v. Rill, supra,* at 276, 286 A.2d 160; *Reighard v. Downs,* 261 Md. 26, 36, 273 A.2d 109 (1971) (party injured by surveyor's negligent misrepresentation not entitled to recover lost profits that were based upon speculation and conjecture).

In urging the lower court to instruct the jury that it could award damages for "loss of use and enjoyment," the homeowners, through counsel, informed the court that they "[were] not asking for loss of rental value" but were seeking damages for:

> [T]he type of loss that they can't use their basements. Its the type of loss that they have a lot of tension between the spouse and the husband. They don't enjoy their home when they walk in there and think about what the fungus might be in the basement or think about in a few months when the winter comes the water table is coming up again, that they don't enjoy being there.

The damages that the homeowners were seeking for loss of use of their basements (and their yards) were subsumed in and were not distinguishable from the damages that they were seeking for loss in fair market value of their properties. The conditions that the homeowners contended made their properties defective, and irreparably so, were the water and drainage problems that they asserted made their basements and yards unusable. The only non-speculative value that could be assigned to the homeowners' loss of use of those portions of their properties would be the difference between the value of each property with a usable basement and yard and its value without a usable basement and yard, at a single point in time, *i.e.,* loss in fair market value.

If we analogize to the property damage cases cited by the homeowners in support of their "loss of use and enjoyment" damages argument, we reach the same conclusion. *Maxa* is

especially instructive for our purposes. There, a municipality dredged its bay shore line to create a yacht basin, causing fill material to spread in front of the plaintiff's property and to cut off his access by boat to the bay. The plaintiff was able to remain in the property but could no longer house his boat at the water's edge. He had to move the boat and pay storage and wharfage charges to keep it elsewhere. The Court explained that the proper measure of damages for the plaintiff's permanent deprivation of his customary use of the waterway was the difference between the fair market value of his property before and after the injury. The plaintiff could not recover for loss of "usable value" of the property as calculated on the basis of loss in rental value because he had remained in the property. Lost rental value thus would constitute double compensation. On the other hand, the sums paid by the plaintiff for boat storage and wharfage charges were recoverable as distinct items of loss brought about by the defendant's interference with the plaintiff's normal use of his property. *Maxa,* 177 Md. at 182–83, 9 A.2d 235.

By comparison, in the case *sub judice,* the homeowners did not lose any rental value, as they concede, nor did they introduce evidence of any expenditures akin to the consequential damages incurred by the landowner plaintiff in *Maxa.* When pared to their essence, the "loss of use and enjoyment" damages that the homeowners sought were damages for mental distress attendant to their claimed pecuniary injuries. The trial court ruled separately that the homeowners could not recover damages for mental distress and that ruling has not been challenged on appeal. Accordingly, the trial court did not err in instructing the jury that it could not award damages for "loss of use and enjoyment" of the properties.

### III

The homeowners contend that the trial court erred in granting Lovell's motion for judgment on their CPA claim because their evidence was legally sufficient to meet the "actual injury" requirement of the statute. Lovell contends

that it was not. In reviewing the trial court's grant of the motion for judgment on the CPA claim, we conduct the same analysis as it did, viewing the evidence in the light most favorable to the homeowners and affirming only if the evidence was insufficient to send the claim to the jury. *Cavacos v. Sarwar*, 313 Md. 248, 250, 545 A.2d 46 (1988); Md. Rule 2–519(b).

Section 13–408(a) of the CPA creates a private right of action "to recover for injury or loss sustained . . . as the result of a practice prohibited by [the CPA]." Md.Code Ann. (1990 Repl.Vol.), § 13–408(a), Com. Law Article. In *Citaramanis v. Hallowell*, 328 Md. 142, 151, 613 A.2d 964 (1992), the Court of Appeals held that "[i]t is manifest from the language employed in § 13–408(a) that the General Assembly intended that a plaintiff pursuing a private action under the CPA prove actual 'injury or loss sustained.' "; *see also Golt v. Phillips*, 308 Md. 1, 517 A.2d 328 (1986)("in determining the damages due the consumer [under the CPA], we must look only to his actual loss or injury caused by the unfair or deceptive trade practices"). In addition, "[s]ection 13–408(a) . . . requires an aggrieved consumer to establish the nature of the actual injury or loss that he or she has allegedly sustained as a result of the prohibited practice." *Citaramanis*, 328 Md. at 152, 613 A.2d 964.

As we have explained in parts I and II, when viewed in the light most favorable to the homeowners, the evidence and all favorable inferences that could be drawn from the evidence did not include any proof of cost of repair damages and was not legally sufficient to prove loss in fair market value or "loss in use and enjoyment" of the properties. The trial court correctly granted Lovell's motion for judgment on the ground that the homeowners could not prove that they had sustained an actual injury or loss by any legally accepted measure of damages.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**