**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 11-1988

EDWARD PRIMOFF; SUZANNE PRIMOFF,

Plaintiffs - Appellees,

v.

KENNARD WARFIELD, JR.; MARY WARFIELD,

Defendants - Appellants.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  William M. Nickerson, Senior District
Judge.  (1:07-cv-02844-WMN)

Argued:  September 19, 2012          Decided:  October 11, 2012

Before TRAXLER, Chief Judge, and DUNCAN and DAVIS, Circuit
Judges.

Reversed, vacated and remanded by unpublished per curiam
opinion. Chief Judge Traxler wrote an opinion concurring in the
judgment.

**ARGUED:** Steven Michael Oster, LAW OFFICE OF STEVEN M. OSTER,
Washington, D.C., for Appellants.  Richard F. Boddie, SLOCUM &
BODDIE, PC, Springfield, Virginia, for Appellees.  **ON BRIEF:**
Ronald L. Spahn, SPAHN AND BROIDA, Columbia, Maryland, for
Appellants.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This case arises out of a real estate deal involving a 194-acre Maryland farm owned by Appellees Edward and Suzanne Primoff. A jury found Appellants Kennard and Mary Warfield liable to the Primoffs for breach of contract and breach of warranty, and awarded $524,000 in damages. The district court denied the Warfields' motion for judgment as a matter of law, remittitur, or a new trial on damages. For the following reasons, we reverse the denial of judgment as a matter of law, vacate the damages award, and remand with instructions to enter a $24,000 judgment in favor the Primoffs.

I.

The evidence at trial established the following facts. Around 2001, the Primoffs began the process of subdividing and developing a vacant portion of the farm. J.A. 72. In November 2002, the Carroll County Planning and Zoning Commission ("Zoning Commission") approved a preliminary plan for "Freedom Hills Farm," a 30-lot development on about 66 acres. See id. at 81–82, 401, 411. The plan included several easements, such as a "water resource protection easement," that would remain in effect after the subdivision. Id. at 413. The plan also called for the Primoffs to retain about 128 acres of "resulting lands" that contained their home and other buildings. Id. at 82, 401, 411.

2

In December 2002, after the Zoning Commission approved the subdivision, the Primoffs entered into an agreement with Kennard Warfield to develop the land. See J.A. 192–222; 401–06. The Primoffs agreed to deed the entire parcel--the land intended for the subdivision, and the resulting lands--to Kennard Warfield for five years in exchange for $3.5 million and equitable title and exclusive possession of the resulting lands. Id. at 401–02. The contract allowed Warfield to make only "minor changes" to the property before reconveying it to the Primoffs. Id. at 402.

In January 2003, the Primoffs conveyed the land to Kennard Warfield, who later conveyed the land to himself and his wife, Mary Warfield. J.A. 97; 323–24. In October 2004, the couple submitted a final record plat for Freedom Hill Farms and granted Carroll County a "flood plain easement" in the resulting lands.[1] Id. at 461, 480. This easement ran along a pre-existing flood plain area--designated by the Federal Emergency Management Agency ("FEMA")--but imposed far stricter use restrictions than previously existed. See id. at 109-12. FEMA regulations prohibited building on the flood plain; the flood plain easement also barred horseback riding, maintaining trails, and

---

[1] Two other easements, for forestation and water resources, were also established and contested by the Primoffs, but are not material to this appeal. See Appellant's Br. 3 n.1.

3

picnicking--uses that the Primoffs had long enjoyed. Id. at 109.

The Primoffs' attorney learned of the flood plain easement days later, when he reviewed the deed to convey the land from the Warfields to the Primoffs. J.A. 127-29. Without indicating that he knew about the easement, the Primoffs' attorney asked the Warfields to record a special warranty deed, guaranteeing no encumbrances on the parcel. Id. at 251-54. The Warfields complied in December 2004. Id. at 258, 471-73. Thereafter, Edward Primoff threatened legal action if the flood plain easement remained in effect. Id. at 103-08.

In January 2005, Edward Primoff took steps to auction the resulting lands and personal property on the farm. J.A. 116-17. He did not tell the auctioneer about the flood plain easement because he feared that prospective bidders would not bid if they knew about the encumbrance. Id. at 121, 157. Instead, he planned to reject all bids, have the easement removed, then contact bidders to make a deal to sell the property free of the encumbrance. Id. at 122. He believed that accepting a bid with the easement would be "buying a lawsuit." Id.

About 200 people attended the auction, which drew a high bid of $5.2 million. J.A. 121. Edward Primoff declined the bid without talking to the bidder or investigating whether

4

the bidder knew of the flood plain easement. Id. at 121–22, 143–44.

In November 2005, the Primoffs sued Carroll County in state court to remove the easements that the Warfields had placed on the resulting lands. J.A. 125–26. The same month, an appraiser valued the resulting lands at $4 million. Id. at 287, 592. It is unclear whether the appraiser knew of the easements or considered such encumbrances in making his valuation.[2]

In June 2006, as a result of the Primoffs' lawsuit against Carroll County, the flood plain easement was nullified. J.A. 126. The litigation cost the Primoffs $24,000.[3]

In June 2008, a second appraiser valued the resulting lands at $3 million. J.A. 272, 274. Although the appraiser had not valued the land in 2007, he estimated that the value had likely dropped because of a "leveling off overall of property values" in 2007. Id. at 273. The 2008 valuation did not take into account the flood plain easement. See id. at 278–80.

In October 2007, the Primoffs sued the Warfields in

---

[2] The appraiser testified that he had used the "narrative appraisal," a calculation of "land value plus building value minus depreciation," and had considered that a "very minimal amount" of the property was in a flood zone. See J.A. 285, 288–90. He did not, however, mention any flood plain easement.

[3] The parties stipulated to this fact, and the Warfields do not challenge this portion of the jury's award. See Appellant's Br. 4 n.2.

5

the district court, alleging breach of contract, breach of warranty, and other claims.[4]  The Primoffs alleged that the Warfields' breach of contract, i.e., adding encumbrances during development, "substantially diminished the value of the Primoffs' property," and "[a]s a further result . . . the Primoffs were unable to sell their property and were required to file suit in the Circuit Court for Carroll County to protect their real property interests."  J.A. 22.  The Primoffs also asserted that the Warfields' violation of the special warranty caused "damages in the diminishment of value of their property and their subsequent inability to sell the property." Id. at 25. The Primoffs sought compensatory damages of $4 million for each of the contract and special warranty counts, and additional damages for the costs of removing the easements related to the special warranty count.  Id. at 22, 25.

The Warfields raised several affirmative defenses, including, inter alia, that the Primoffs "owed a duty to mitigate their damages and/or losses," and had failed to do so.[5]

---

[4] J.A. 21-30.  The district court had diversity jurisdiction because the Warfields are citizens of Maryland, and the Primoffs had moved and become citizens of Florida before filing the lawsuit.  See J.A. 69; Primoff v. Warfield, No. 9, 1:07-cv-02844, at 5-7 (D. Md. Aug. 30, 2011).  Although they had relocated to Florida, the Primoffs still owned (and remain the owners of) the resulting lands.  J.A. 658.

[5]  J.A.  38.   The  Warfields  also  asserted  several (Continued)

At the close of the Primoffs' case at trial, the Warfields moved for judgment as a matter of law under Fed. R. Civ. P. 50(a). S.J.A. 2, 6. First, the Warfields argued that the Primoffs had provided "[z]ero testimony" that the flood plain easement had caused a diminution in value, and "no evidence" that "the property was unsellable for a period of time because the flood plain easement was there." Id. at 7, 9-10. The district court rejected this argument, reasoning that the issue was a jury question, and any concerns about the standard of proof could be addressed in jury instructions. Id. at 10-11. Second, the Warfields argued that the Primoffs had failed to mitigate their damages by inquiring further into the $5.2 million auction bid for their property. Id. at 8. The Warfields asked the judge to instruct the jury to consider damages only for lost profits that exceeded $5.2 million. Id. at 9. The district court rejected this request, noting that "the mitigation of damages is a matter that the jury can consider, assuming that there is some evidence to support it, to lessen the amount of damages that the plaintiff might otherwise receive . . . . But, in terms of a motion -- it seems to me that it would never come to something that would be decided by a motion." Id.

counterclaims. Id. at 39-55.

The district court instructed the jury as follows:

[T]he essential elements of proof that are required to support an action for breach of contract are; first, the existence of a contract between the parties; secondly, performance by the plaintiff with respect to whichever claim you are looking at, and that performance must have occurred, unless it was somehow excused; third, an unjustified or an unexcused failure to perform on behalf of the defendant; and, fourth, some damages were directly caused by the breach.

* * *

[I]f you find that the Primoffs have proven by a preponderance of the evidence that the Warfields did encumber the resulting land, property, and that the Primoffs incurred damages for loss as a result, then you must find that the Primoffs have met their burden as to that claim and award such damages as have been proven to your satisfaction.

* * *

[A] prevailing plaintiff . . . is entitled to be placed in the same position as if their contract had not been breached. The plaintiff may recover those damages which naturally arise from the breaking of a contract.

* * *

There's a duty on the part of the party claiming damages for a breach of contract to use reasonable efforts to reduce or minimize the damages. But there's no requirement that a party in doing that accept the risk of additional loss in an effort to reduce the damages. In this case, the burden would be on the Warfields, as defendants, to prove that any damages or loss to the Primoffs attributable to a breach of contract by the Warfields should have been minimized by some reasonable effort on the part of the Primoffs.

J.A. 396-99.

The jury found the Warfields liable for breach of contract and awarded the Primoffs $250,000 on that claim. J.A.

8

400C.  The jury also found for the Primoffs on the breach of warranty claim, and awarded $274,000 in damages: "250,000 + 24,000."  Id. at 400C, 655.

Following the verdict, the Warfields renewed their motion for judgment as a matter of law, and moved alternatively for remittitur or a new trial under Fed. R. Civ. P. 59.  See J.A. 665.  The Warfields made three arguments.  First, they argued that the Primoffs had failed to present evidence that the easement had caused a compensable injury.  Id. at 661.  The district court rejected this argument, reasoning that, "[w]hile there was little or no testimony that the easement was the direct cause of the loss of value, a jury could have made this reasonable inference."  Id. at 662.

Second, the Warfields argued that the jury improperly awarded the Primoffs duplicative damages for the same injury by awarding $250,000 for the breach of contract and $274,000 for the breach of warranty.  See J.A. 660.  The Warfields argued that, as a matter of law, the award for each claim should have been identical.  Id.  The district court upheld the damages awards, however, citing the presumption that the jury had heeded the instruction against duplicate damages, and the presumption in favor of supporting jury verdicts, even when harmonizing a jury's special verdict answers requires a "strained" interpretation.  Id. at 660, 663.  The district court noted that

9

> it is plausible that the jury intended to award [the Primoffs] a total of $500,000 in collateral lost profits, plus an additional $24,000 to compensate [them] for the costs incurred to remove the easement. In this way, the jury may have determined that the total harm caused by the [Warfields'] liability was $524,000, after which the jury merely apportioned the damages among the two claims.

Id. at 663.

Third, the Warfields argued that the Primoffs had failed to mitigate their damages when they failed to "more aggressively pursue" the auction sale of the resulting lands. See J.A. 664. The district court rejected this argument, finding that the jury had drawn a reasonable inference that the Primoffs had not failed to mitigate because (1) Edward Primoff had testified that a sale could have resulted in a lawsuit, and (2) the Primoffs were not required to risk additional loss in order to mitigate harm. Id.

The district court left the verdict undisturbed and entered judgment against the Warfields, who filed a timely appeal.

## II.

The Warfields do not contest liability; they challenge only $500,000 of the $524,000 damages award. They argue that the district court erred in denying their motion for judgment as a matter of law, remittitur, or a new trial because (1) the

10

Primoffs failed to prove compensable injury beyond the $24,000 costs they incurred to nullify the flood plain easement; (2) the Primoffs failed to mitigate damages; and (3) the awards for breach of contract and breach of warranty were duplicative.

For the reasons that follow, we agree that the Primoffs failed to prove compensable injury beyond the $24,000 in litigation costs, and, thus, the district court erred in denying judgment as a matter of law.[6]

III.

As a preliminary matter, we reject the Primoffs' contention that the Warfields are procedurally barred from challenging the sufficiency of the damages evidence. See Appellees' Br. 16. The Primoffs argue that the Warfields challenged only mitigation and diminution at trial and, thus, were precluded from raising "the issues of foreseeability and 'lost profits'" in their post-trial motion or on appeal. Id. But only a complete failure at trial to challenge the sufficiency of the evidence precludes a party from raising that issue in a post-trial motion or on appeal. See Price v. City of Charlotte, 93 F.3d 1241, 1249 (4th Cir. 1996). At trial, the

---

[6] Because we find the evidence insufficient to sustain an award above the stipulated amount of damages, we need not and do address the Warfields' other grounds for relief.

11

Warfields undoubtedly challenged sufficiency when they argued that the Primoffs had presented no evidence that the flood plain easement had caused a decrease in value or made the property unsellable. S.J.A. 7, 9-10. Accordingly, we proceed to the merits of the Warfields' appeal.[7]

IV.

A.

"We review de novo the legal conclusions upon which the district court's denial of judgment as a matter of law were premised." Belk, Inc. v. Meyer Corp., U.S., 679 F.3d 146, 164 (4th Cir. 2012). "If, viewing the facts in the light most favorable to the non-moving party, there is sufficient evidence for a reasonable jury to have found in [the non-moving party's] favor, we are constrained to affirm the jury verdict." Lack v. Wal-Mart Stores, Inc., 240 F.3d 255, 259 (4th Cir. 2001).

B.

The Warfields argue that the Primoffs failed to

---

[7] We also reject the Primoffs' contention that, by failing to object to jury instructions, the Warfields waived their challenge to the sufficiency of the evidence. See Appellees' Br. 13. The Warfields' "failure to specifically object to the instructions" did not "waive the position [they] had already unsuccessfully presented to the district court" in their motion for judgment as a matter of law. See College Loan Corp. v. SLM Corp., 396 F.3d 588, 599 n.10 (4th Cir. 2005).

12

provide any evidence of lost profits damages.

Under Maryland law, which governs this diversity dispute, a plaintiff who proves breach of contract may recover (1) "the losses proximately caused by the breach," (2) "that were reasonably foreseeable," and (3) "that have been proven with reasonable certainty." Hoang v. Hewitt Ave. Assocs., LLC, 936 A.2d 915, 934 (Md. Ct. Spec. App. 2007). In determining whether the damages were reasonably foreseeable, Maryland follows the two-part principle established in the venerable case of Hadley v. Baxendale, 156 Eng. Rep. 145 (1854). Id.

> The first aspect of that principle holds that . . . the plaintiff in a breach of contract action may recover general damages of the sort that are presumed to have been in the contemplation of the parties when the contract was made.
>
> Under the second aspect of the principle . . . , a plaintiff . . . also is entitled to recover damages "such as may fairly and reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it." Such special or consequential damages are not presumed to have been in the contemplation of the parties when they made their contract but may be shown from evidence of the particular circumstances to have been in their contemplation.

Id. (emphasis in original) (internal citation omitted). Reasonable certainty of the damages refers to the

> likelihood of the damages being incurred as a consequence of the breach, and their probable amount. Losses that are speculative, hypothetical, remote, or contingent either in eventuality or amount will not

13

qualify as "reasonably certain" and therefore recoverable as contract damages.[8]

Lost profits and diminution of value are two methods of calculating damages for breach of contract.

> Lost profit damages fall into two categories. "Direct profits" are those "that would have resulted immediately from the performance of the contract broken." "Collateral profits" are those that would have resulted not from the contract that was broken but from the loss of other "'contracts collateral to the one broken, contracts to which the defendant[s] [were] not [themselves] . . . part[ies].'"

Hoang, 936 A.2d at 935–36 (internal citations omitted). Collateral lost profits include the profits a buyer anticipated for reselling the land to another, had the breach not prevented the resale. Id. at 936. A plaintiff seeking collateral lost profits damages must strictly comply with the proximate causation, foreseeability, and certainty requirements enumerated above. Hoang, 936 A.2d at 943.

To demonstrate diminution of value damages, a plaintiff must show "the difference between two valuation figures at one point in time." Hall v. Lovell Regency Homes Ltd. P'ship, 8 A.2d 344, 354 (Md. Ct. Spec. App. 1998). A plaintiff may do so by showing his "out of pocket" losses in a specific transaction-- for example, the difference between the

---

[8] Hoang, 936 A.2d at 935. Although Hoang concerned damages for the failure to convey property according to a valid contract, nothing in its reasoning suggests that its principles apply only to that type of contract breach.

amount the plaintiff received for reselling the land, and the amount the plaintiff would have received absent the defendant's breach. See id. at 352. Alternatively, under the "benefit of the bargain" approach, a plaintiff may recover the difference between the value of the land after the breach, and the value of the land had there been no breach. See id. at 354.

The Primoffs sought lost profits and diminution of value damages. The evidence was insufficient, however, to permit a reasonable jury to find either.[9]

As to lost profits, the Primoffs presented no evidence that they told the Warfields that they intended to sell the resulting lands; thus, they failed to show that collateral lost profits were reasonably foreseeable. See Hoang, 936 A.2d at

_____

[9] The Warfields challenge only the evidence as it relates to lost profits. See Appellants' Br. 12-14. Although the district court acknowledged that the Primoffs had argued for both types of damages at trial, see J.A. 658-59, it upheld the jury's award as collateral lost profits, id. at 663. On appeal, the Primoffs alternatively characterize the damages award as lost profits and diminution of value damages. Compare Appellees' Br. 12 ("As a direct result of the Warfields' conduct, the Primoffs were not able to sell their property.") and 25 ("it was reasonable for the jury to infer that [Kennard] Warfield knew that placing the impermissible easements on the Primoffs' property would cause the Primoffs harm and they would have difficulty selling the Resulting Lands."), with id. at 20 ("diminution in value [is] a consequential damage"). See also id. at 13 ("it was reasonably foreseeable to the Warfields that any breach of the Contract of Sale or special warranty in the Confirmatory Deed would result in damages and negatively impact not only the value of the property, but also the Primoffs' ability to sell it.").

15

934. And, this is true even in the face of any background notion that land, being inherently of limited availability, might someday be offered for sale.

Even if the parties had contemplated such a sale, however, the evidence failed to establish that the flood plain easement proximately caused any lost profits, or that the losses were established with reasonable certainty. See id. The Primoffs presented no evidence that a prospective buyer refused to deal because of the easement. Nor did they provide evidence that might have established the reasonable certainty of lost profits, such as the real estate market when they planned to sell, the likelihood that they would have found a buyer, a reasonably expected sale price, or the Primoffs' track record and experience (or that of a similarly situated potential seller) in selling such property. See Hoang, 936 A.2d at 943–44 (finding sufficient evidence of lost profits when the plaintiff presented expert testimony about the costs it likely would have incurred in developing the land, the probability that the houses in the development would have been sold, the prices the houses would have fetched, and the profits the plaintiff would have received). The evidence thus failed to support the jury's award on the basis of lost profits.

The evidence also failed to establish that the Warfields' breach caused a diminution in the value of the land.

16

Although the Primoffs presented two valuations, so far as the trial evidence showed, the appraisals were made without knowledge of the easements. See J.A. 278-80, 285, 288-90. Moreover, the appraisals were more than two years apart, providing no basis for comparing the value of the land with the easement, and the value of the land without the easement, at a single point in time. See id.; Hall, 8 A.2d at 354. Thus, the jury could only speculate that the easement had caused a drop in value.

V.

For the reasons set forth, we conclude as a matter of law that the evidence was insufficient to support the jury's $524,000 damages award. Accordingly, we reverse the denial of judgment as a matter of law, vacate the damages award, and remand with instructions to enter a $24,000 judgment in favor of the Primoffs.

REVERSED, VACATED, AND REMANDED

17

TRAXLER, Chief Judge, concurring in the result:

I concur in the result reached in this case because there was no evidence to show what the value of the resulting lands was without the flood plain easement. There was testimony about the value of the land shortly after the auction, but no testimony about whether, or how, the flood plain easement factored into the calculation. For this reason the jury, in my judgment, was left to speculation and conjecture as to the profits lost, which cannot support a verdict. 25 C.J.S. Damages § 36.